**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

IN RE:

LAPEER INDUSTRIES, INC              Case No. 20-48744
                                      Chapter 11 proceeding

        Debtor.                 Judge: Maria L. Oxholm
_____/

**DEBTOR'S SECOND MOTION FOR ENTRY OF AN ORDER (I) APPROVING
BIDDING PROCEDURES, (II) SCHEDULING AN AUCTION AND A SALE HEARING
IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF DEBTOR'S
ASSETS, (III) ESTABLISHING DATES AND DEADLINES IN CONNECTION WITH
THE SALE, (IV) APPROVING THE FORM OF THE ASSET PURCHASE
AGREEMENT, AND (V) GRANTING RELATED RELIEF; AND FOR ENTRY OF AN
ORDER (A) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF DEBTOR'S
ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND
INTERESTS, AND (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF
CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (C)
GRANTING RELATED RELIEF; AND FOR ENTRY OF AN ORDER ESTABLISHING
AN ADMINISTRATIVE CLAIMS BAR DATE**

NOW COMES Debtor Lapeer Industries, Inc., by and through its attorneys

Winegarden, Haley, Lindholm, Tucker, and Himelhoch PLC, and for *Debtor's Motion for*

*Entry of an Order (I) Approving Bidding Procedures, (II) Scheduling an Auction and a*

*Sale Hearing in Connection with the Sale of Substantially All of Debtor's Assets, (III)*

*Establishing Dates and Deadlines in Connection with the Sale, and (IV) Approving the*

*Form of the Asset Purchase agreement, and (V) Granting Related Relief; and for Entry*

*of an Order (A) Authorizing the Sale of Substantially All of Debtor's Assets Free and*

*Clear of Liens, Claims, Encumbrances, and Interests, (B) Approving the Assumption*

*and Assignment of Certain Executory Contracts and Unexpired Leases, and (C)*

*Granting Related Relief; and for entry of an Order Establishing and Administrative Claims Bar Date* (collectively, the "Sale Motion"), states as follows:

## PRELIMINARY STATEMENT

1.  Through this Sale Motion, Debtor seeks, among other things, approval of Bidding Procedures as set forth below to be followed during an auction sale ("Sale") of substantially all of Debtor's assets used or useful in Debtor's business ("the Assets"). The Debtor proposes to sell these Assets to the bidder at the auction that presents, in the exercise of the Debtor's business judgment, the highest and best offer.

2.  As set forth below, Debtor believes that a going-concern auction sale of the Assets is in the best interests of Debtor's estate. A sale as a going concern will allow Debtor to maximize the value of the Assets, where a disorderly liquidation would likely lead to a scenario where no distributions are made in excess of secured claims.

## JURISDICTION AND VENUE

3.  The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334.

4.  This is a core proceeding under 28 U.S.C. § 157(b).

5.  Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

6.  Debtor commenced a voluntary case under Chapter 11 of Title 11 of the United States Code on August 5, 2020 ("Petition Date").

7.  Debtor retains possession of its property and is operating and managing its businesses as debtor-in-possession under 11 U.S.C. §§ 1107(a) and 1108.

8. An official committee of unsecured creditors has been appointed in this Chapter 11 case. No Trustee or examiner has been appointed in this case.

9. The Debtor originally intended to seek confirmation of a Chapter 11 Plan in this case. However, circumstances outside of the control of the Debtor have caused outside funding for a settlement with Debtor's primary secured creditor to be unavailable. This has caused significant cash-flow issues and has impaired the ability of Debtor to obtain conventional post-petition financing.

10. Debtor quickly changed its approach, seeking and obtaining a court-approved bidding procedures order which would facilitate a sale of substantially all of its Assets. A copy of the Bidding Procedures Order (Doc. 259) is attached as **Exhibit 1**.

11. The Debtor and its professionals complied with the approved bidding procedures and significant marketing occurred in order to promote the sale of the Assets.

12. Debtor's Chief Restructuring Officer approached 120 parties evenly split between strategic purchasers and financial companies concerning the possibility of an asset purchase. A data room was established in order to consolidate relevant information concerning the Debtor's Assets and to allow for easy access. 25 parties expressed interest and were sent a Non-Disclosure Agreement. Ultimately 15 parties returned the NDA and were allowed entry into the data room. The data room was very active up to the bid deadline, with several parties expressing interest until the very end.

13. The efforts were fruitful in that a bid to purchase the company was received. Unfortunately, only one bid was received which promised to pay the 2.5 million minimum bid amount.

14.     The bidder deposited $100,000.00 according to the bidding procedures order and the consulting parties (as defined in the Bidding Procedures Order) worked cooperatively throughout the month of December to allow the bidder additional time.

15.     The hope was that the bidder would make sufficient progress in order to make his bid into a bid which would be considered qualified under the Bidding Procedures Order.

16.     Regrettably, the bidder failed to obtain financing in an amount sufficient to support the bid. The bidder has failed to close the purchase transaction and Debtor now believes that the bidder will not be able to close as promised.

17.     Debtor has continued to market the Assets through its CRO and its principal.

18.     The data room established for the sale remains active to this day.

19.     Debtor opened a dialogue with the Stalking Horse Bidder discussed herein in mid-December, prior to the date when it became completely clear that the original 363 Motion would not produce an asset purchaser.

20.     Debtor's CRO and a prospective financial buyer out of Cincinnati toured Debtor's facility approximately two weeks ago.

21.     An entity established by a third prospective purchaser who joined the discussion recently has submitted a written indication of interest which expresses a desire to purchase the Assets.

22.     Additionally, Debtor has negotiated at length with the Stalking Horse Bidder discussed herein who has formed an entity and presented a proposed asset purchase agreement to the Debtor.

4

23.     The Debtor believes that, to date, the offer submitted by the Stalking Horse Bidder discussed herein represents the highest and best offer to purchase the Assets.

24.     Debtor acknowledges that the offers from these purchasers would not have been high enough to meet the minimum bid requirement of the bidding procedures order approved pursuant to the prior 363 sale motion.

25.     Debtor believes, however, that acceptance of the Stalking Horse Bidder's offer and a subsequent auction sale will produce a significantly higher dividend for creditors as compared to that which would be distributed after a Chapter 7 liquidation.

26.     Debtor is hopeful that there will be more bids at the auction. Debtor intends to send notice of this Motion to all of the 120 parties originally approached in addition to mailing a copy of the Motion to the creditor matrix. Debtor is hopeful that these mailings may trigger additional interest from one or more of the 120 parties who were originally contacted concerning the Assets.

## FORM OF PROPOSED SALE

27.     Debtor is soliciting and intends to continue to solicit offers for the purchase of the Assets under § 363 of the Bankruptcy Code.

28.     Debtor requests that this sale occur on an accelerated timeline. Debtor believes that its prior marketing efforts constitute sufficient outreach and marketing which establish that the purchase offer accepted is the best value which can be obtained for the Assets under the circumstances. Further, this purchase price will be tested by the contemplated auction.

29.    Additionally, Debtor believes that if the sale is not completed very quickly the Assets will lose much of their worth as Debtor expects that customers and contracts will be lost.

30.    For these reasons, Debtor requests that the Court find that the necessary marketing has already occurred and order that an auction be scheduled immediately.

31.    Debtor, subject to Court approval, intends to establish a minimum bid of $1,300,000.00 at the auction AND require payment by the purchaser of the entire amount owed in connection with the DIP financing provided by the Stalking Horse Bidder. The Stalking Horse Bidder has agreed to forgive the entire amount owed for DIP financing if it becomes the Winning Bidder.

32.    Debtor, subject to Court approval, intends to require a deposit of $50,000.00 from any party who is not the Stalking Horse Bidder that wishes to bid. Debtor would require that deposits be made 1 day prior to the scheduled auction.

33.    Debtor has selected Lapeer Industries Enterprises, LLC as the "Stalking Horse Bidder" who is willing to purchase the Assets. Debtor hereby discloses that its equity owner Daniel Schreiber holds a partial membership interest in Lapeer Industries Enterprises, LLC. Debtor has entered, subject to court approval, into an Asset Purchase Agreement ("APA") which is attached as **Exhibit 6A**. The APA describes the terms upon which the Stalking Horse Bidder will purchase the Assets. Debtor, in connection with this Motion, also seeks court approval of the Stalking Horse APA.

34.    The purchase price in the Stalking Horse Bidder APA is $1,300,000.00.

35.    Debtor proposes bid increments of $50,000 if an auction occurs.

6

36.     Following entry of the Bidding Procedures Order, Debtor will continue to market the Assets to the previously contacted parties with the purpose of obtaining the highest and best offer.

## BIDDING PROCEDURES

37.     Debtor has marketed and proposes to continue to offer and market the Assets for sale as a whole with Debtor's businesses being sold as a going concern.

38.     Any Qualified Bidder as defined below may bid on all of the Assets together.

39.     If no Qualified Bid, as defined below, other the Stalking Horse Bidder's Stalking Horse Bid is received for the Assets, Debtor will move the Court to approve the Stalking Horse Bid as the highest or otherwise best bid for the Assets. The Bidding Procedures contemplate an auction process whereby only bidders having submitted a Qualified Bid are eligible to participate.

40.     The bid submitted by the Stalking Horse Bidder pursuant to the APA will establish a baseline bid for the Assets, which Debtor will use to solicit Qualified Bids from other bidders.

41.     The highest or otherwise best Qualified Bid submitted before the Auction will serve as the opening bid at the Auction.

42.     The following is a summary of the Bidding Procedures:[1]

A.     ASSETS. The assets to be sold are substantially all of Debtor's assets used or useful in its businesses.

---

[1]This summary is not intended to be a complete discussion of all of the provisions of the Bidding Procedures and is qualified in all respects by the terms of the Bidding Procedures For a complete recital of all of the terms and conditions of the Bidding Procedures, parties are encouraged to consult the Bidding Procedures attached as Exhibit 6B to the Sale Motion.

B.    <u>DUE DILIGENCE</u>. Parties interested in purchasing the Assets may obtain due diligence materials regarding the Assets from Debtor. Interested parties must execute a form nondisclosure agreement acceptable to Debtor ("<u>NDA</u>") before any due diligence materials will be provided. Parties that have previously executed an NDA do not need to execute a new NDA. All due diligence requests should be directed to Debtor's counsel, Zachary R. Tucker at ztucker@winegarden-law.com. Debtor will comply with other reasonable due diligence requests made by interested parties, and all due diligence must be completed before the Auction.

C.    <u>QUALIFIED BIDDERS</u>.

(i)    Bidders must be Qualified Bidders to participate at the Auction.

(ii)    To become a Qualified Bidder, an individual or entity must make a deposit of $50,000.00 on or before **February 1, 2021**. The deposit be refundable only if the Qualified Bidder participates in the auction and is outbid by another Qualified Bidder

(iii)    A "<u>Qualified Bidder</u>" is any entity that submits a Qualified Bid in accordance with these Bidding Procedures. The Stalking Horse Bidder will be deemed a Qualified Bidder.

(iv)    A "<u>Qualified Bid</u>" is a written offer to purchase the Assets that complies with all of the requirements of the Bidding Procedures.

(1)    **Deadline to Submit Qualified Bids**: Any person or entity that wishes to submit a Qualified Bid must submit its bid so that it is actually received by Debtor's counsel no later than **5:00 p.m. prevailing Eastern Time on February 1, 2021** ("<u>Qualified Bid Deadline</u>").

(2)    **Where to Submit Bids**: Bids must be submitted by electronic mail to the e-mail addresses below of Debtor's counsel, counsel to the Official Committee of Unsecured Creditors ("<u>Committee</u>"), and the Office of the United States Trustee and must include an address, telephone number, and electronic mail address at which the entity submitting the bid ("<u>Proposed Bidder</u>") may be contacted.

a.    Debtor's counsel:

Zachary R. Tucker
9460 S. Saginaw Road, Suite A
Grand Blanc, MI 48439
ztucker@winegarden-law.com

b.      Committee counsel:
Marc N. Swanson
150 West Jefferson, Suite 2500
Detroit, MI 48226
swansonm@millercanfield.com

c.      Office of the United States Trustee:
Jill M. Gies
Office of the United States Trustee
211 W. Fort St., Ste. 700
Detroit, MI 48226
Jill.gies@usdoj.gov

d.      Trion Solutions, Inc. and Trion Staffing Solutions, Inc.:
Shannon L. Deeby
151 S. Old Woodward Ave., Suite 200
Birmingham, MI 48009
sdeeby@clarkhill.com

e.      Manufacturers Capital, a division of Commercial Credit Group, Inc.:
David M. Black
One Towne Squire, Suite 1700
Southfield, Michigan 48076
dblack@sommerspc.com

(3)     **Content of Qualified Bids**: The Stalking Horse Bid shall be deemed to be a Qualified Bid submitted by a Qualified Bidder. All other Qualified Bids must include the following items (collectively, the "Bid Package"):

a.      An unconditional cash offer for the Assets that is not less than the sum of the $1,300,000.00.

b.      An executed confidentiality agreement in form and substance reasonably satisfactory to the Debtor if one was not previously executed.

9

c.     A signed asset purchase agreement that fully outlines the terms and conditions of the proposed purchase transaction.

d.     A designation of the executory contracts and unexpired leases that the Qualified Bidder desires to be assumed and assigned by the Debtor to the Qualified Bidder. A potential Qualified Bidder must make a good faith showing of adequate assurance of future performance with respect to any unexpired leases or executory contracts that are to be assumed and assigned to the Qualified Bidder. In addition to paying the cash purchase requirement any cure costs must be paid by the Qualified Bidder.

e.     A disclosure of the identity of each person or entity that will be bidding for the Assets and any connection with Debtor. Additionally, a disclosure of the identity of the person that would be designated to bid at the Auction on behalf of the Proposed Bidder.

f.     A binding and irrevocable offer.

g.     The audited (if in existence) or unaudited financial statements and/or other written evidence of a financing commitment or other evidence satisfactory to the Debtor, in consultation with Debtor's professionals, and the Official Committee of Unsecured Creditors (collectively, the "Consultation Parties") of the financial ability of the Proposed Bidder to consummate the proposed transaction.

h.     A board/member resolution or written evidence that demonstrates to the reasonable satisfaction of the Debtor that the Proposed Bidder has obtained all corporate or other authority necessary for it to close and fund the proposed transaction and that the person(s) authorized to bid at the Auction on behalf of such entity are authorized to do so.

i.     A deposit in cash or other immediately available funds ("Deposit") to be wired into a bank account to be designated by Debtor, which Deposit must be received on or before the Qualified Bid Deadline and in the amount of not less than $50,000.00.

j.      The bid must not contain any contingencies and may not include any financial or due diligence contingencies.

k.      All bids must contemplate the purchase of Debtor's assets "AS IS AND WHERE IS." Any signed purchase agreement must be consistent with this requirement and must not require Debtor to make any representations inconsistent with an "as is where is" transaction.

l.      All bids other than the Stalking Horse Bidder's bid must also provide for payment to the Stalking Horse Bidder of the entire outstanding balance owed in connection with the DIP financing provided by the Stalking Horse Bidder. For the avoidance of doubt, this amount must be paid in addition to the Qualified Bidder's bid amount.

D.    DESIGNATION OF QUALIFIED BIDS.

(i)     On or before February 2, 2021, at 12:00 p.m. Eastern Time and after consultation with the Consultation Parties, Debtor will, in its sole discretion, designate those submitted bids, if any, that are Qualified Bids.

(ii)    After consultation with the Consultation Parties, Debtor may, in its sole discretion, determine, at the Auction, that a previously Qualified Bidder has altered its bid in a way that causes it to no longer be a Qualified Bidder.

(iii)   If no Qualified Bids other than the Stalking Horse Bid are received by the Qualified Bid Deadline, Debtor will seek Bankruptcy Court approval of a sale of the Assets to the Stalking Horse Bidder pursuant to the APA.

E.    AUCTION.

(i)     If one or more Qualified Bids is received (in addition to the Stalking Horse Bid) by the Qualified Bid Deadline, the Auction will be conducted at the offices of Winegarden, Haley, Lindholm, Tucker, and Himelhoch, PLC or such other place as may be designated by the Debtor, on February 2, 2021, commencing at 3:00 p.m. prevailing Eastern Time ("Auction"). Qualified Bidders may attend the Auction via remote video connection, provided that they contact the

11

attorney for the Debtor by email to ztucker@winegarden-law.com at least seven (7) days prior to the auction to make arrangements for a remote appearance. Qualified Bidders appearing remotely will need to provide visual verification of their identities prior to being allowed to participate.

(ii) Only representatives of Debtor, the Committee, the United States Trustee, Stalking Horse Bidder, any Qualified Bidder, and any entity holding a Lien may attend the Auction.

(iii) Debtor may announce at the Auction additional procedural, nonmaterial rules for bidding and other procedures that are reasonable under the circumstances *(e.g.,* regarding the amount of time allotted to make subsequent overbids) for conducting the Auction, so long as such rules are not inconsistent with the provisions of the Bidding Procedures Order, any order of the Court entered in connection therewith, the APA, or the Bankruptcy Code

(iv) The conduct of the Auction may be transcribed, but transcription is not required.

(v) Following consultation with the Consultation Parties, Debtor shall designate, in its sole discretion, at the start of the Auction the Qualified Bid determined by the Debtor in the exercise of its business judgment to be the highest and best bid as the initial bid for the Assets ("Initial Qualified Bid").

(vi) The first overbid above the Initial Qualified Bid and each subsequent overbid must be in the form of cash consideration and must be determined by Debtor to be equal in value to the sum of $50,000 ("Bidding Increment") above the immediately preceding Initial Qualified Bid or subsequent overbid (if applicable).

(vii) Promptly after the conclusion of the Auction and following consultation with the Consultation Parties, Debtor will designate the highest or best Qualified Bid (taking into account all relevant factors, including, but not limited to, cash consideration, the terms and conditions of the proposed agreement, the aggregate value offered by the Qualified Bidder, the speed and certainty of consummation of a sale of the Assets to such Qualified Bidder), and the net proceeds that will be made available to Debtor's bankruptcy estate upon consummation of the sale of the Assets (the "Winning Bidder") and shall designate the next highest or otherwise

best Qualified Bid (the "<u>Back-Up Bid</u>") and the entity submitting the Back-Up Bid ("<u>Back-Up Bidder</u>").

(viii)    Debtor will file a notice immediately after the Auction identifying the Winning Bidder. The Stalking Horse Bidder's Premium is additional consideration that the Winning Bidder will be required to pay to Debtor's estate, but will not be taken into account in determining the Winning Bidder.

(ix)    If the Winning Bid is approved by the Court and the Winning Bidder fails to close, Debtor shall be authorized to close on the Back-Up Bid without further order of the Court.

## <u>THE SALE ORDER</u>

43.    The proposed order authorizing and approving the Sale ("<u>Sale Order</u>"), which will be filed before the Sale Hearing, will include the following findings and provisions: (a) the Winning Bidder is a good faith purchaser entitled to the protections of § 363(m) of the Bankruptcy Code; (b) the sale price for the Assets was not controlled by a collusive agreement among potential bidders within the meaning of § 363(n) of the Bankruptcy Code; (c) the Winning Bidder is not the successor of the Debtor, shall have no liability for any pre-closing liabilities, including customer deposits, pre-paid contract or taxes; and (d) the Winning Bidder is not the alter ego or continuation of the Debtor.

## APPROVAL OF ASSUMPTION AND ASSIGNMENT<br><u>OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>

44.    Debtor is a party to executory contracts or unexpired leases that may be assumed and assigned to the Winning Bidder pursuant to § 365 of the Bankruptcy Code.

45.    Debtor believes that these executory contracts and unexpired leases are valuable assets of the estate and are an important component of the overall package of the assets to be marketed for the Sale.

46.     The Bidding Procedures require each Qualified Bidder to identify executory contracts and unexpired leases to be assumed and assigned by Debtor to the Winning Bidder in the event the Qualified Bidder is the Winning Bidder.

47.     Debtor requests authority under § 365 to assume and assign to the Winning Bidder certain executory contracts and unexpired leases ("Assumed and Assigned Agreements").

48.     The form of notice of the proposed assumption and assignment of executory contracts and unexpired leases ("Assumption and Assignment Notice") is attached as **Exhibit 6C** to this Sale Motion.

49.     The proposed Bidding Procedures Order, attached as Exhibit 1 to the Sale Motion, adopts the following procedures for the assumption and assignment of executory contracts and unexpired leases ("Assumption and Assignment Procedures"):[2]

A.     By no later than one day after entry of the Bidding Procedures Order, the Debtor will file a schedule (the "Cure Schedule") which will be attached to the Assumption and Assignment Notice, identifying (i) the Assumed and Assigned Agreements, potentially to be assumed and assigned to a Stalking Horse Bidder in the event of a Sale and (ii) the amount, if any, the Debtor believes is necessary to cure all monetary defaults and other defaults under such agreement pursuant to § 365 of the Bankruptcy Code ("Cure Costs").

B.     Upon the filing of the Cure Schedule, the Debtor will serve the Cure Schedule and the Assumption and Assignment Notice on each of the non-debtor counterparties listed on the Cure Schedule by first class mail.

---

[2]This summary is not intended to be a complete discussion of all of the provisions of the Assumption and Assignment Procedures and is qualified in all respects by the terms of the Assumption and Assignment Procedures. For a complete recital of all of the terms and conditions of the Assumption and Assignment Procedures, parties are encouraged to consult the Assumption and Assignment Procedures contained in the Bidding Procedures Order attached as Exhibit 1 to the Sale Motion.

C.    The Assumption and Assignment Notice will state that the Debtor is or may be seeking the assumption and assignment of the Assumed and Assigned Agreement and include (i) a description of each executory contract and unexpired lease that may be assumed and assigned in connection with the Sale, (ii) the deadline for objecting ("Cure/Assignment Objection") to the amount of the proposed Cure Costs related to any executory contract or unexpired lease is **February 2, 2021 at 5:00 p.m. Eastern Time** ("Cure/Assignment Objection Deadline") and (iii) the deadline for objecting ("Adequate Assurance Objection") to the ability of the Stalking Horse Bidder to provide adequate assurance of future performance under any Assumed and Assigned Agreement is **February 2, 2020 at 5:00 p.m. Eastern Time** ("Adequate Assurance Objection Deadline" and collectively with the Cure/Assignment Objection Deadline, the "Cure/Adequate Assurance Objection Deadlines").

D.    Each Cure/Assignment Objection and/or Adequate Assurance Objection must be filed with the Bankruptcy Court and served on Debtor's counsel so that it is received by the applicable Cure/Adequate Assurance Objection Deadline.

E.    If no objections are received with respect to any Assumed and Assigned Agreement, then the Cure Costs set forth in the Cure Schedule for such agreement will be binding upon the non-debtor counterparty to such agreement for all purposes and will constitute a final determination of the Cure Costs required to be paid by or on behalf of the applicable Debtor in connection with the assumption and assignment of such agreement.

F.    In addition, all counterparties to the Assumed and Assigned Agreements who fail to file an objection before the Cure/Adequate Assurance Objection Deadlines, as applicable, will be (i) forever barred from objecting to the Cure Costs or adequate assurance of future performance with respect to the Assumed and Assigned Agreements, and the Debtor and the Winning Bidder will be entitled to rely solely upon the Cure Cost set forth on the Cure Schedule, (ii) deemed to have consented to the assumption and assignment, and (iii) forever barred and estopped from asserting or claiming against the Debtor or the Winning Bidder that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied or that there is any other objection or defense to the assumptions or assignment of the applicable Assumed and Assigned Agreement.

G.    The Debtor or the Winning Bidder may amend the Cure Schedule to remove any Assumed and Assigned Agreement at any time

before such Assumed and Assigned Agreement is actually assumed and assigned pursuant to an order of the Court. The non-debtor party or parties to any such removed contract or lease will be notified of such exclusion by written notice mailed within one (1) business day after such amendment.

## **SALE HEARING, AUCTION, AND OBJECTION DEADLINE**

50.     Subject to the Court's availability, Debtor proposes the following timetable

in connection with the Auction and hearing to approve the Sale ("Sale Hearing"):

A.     <u>NOTICE OF AUCTION AND SALE</u>. Within one day after entry of Bidding Procedures Order, Debtor will provide notification of the Bidding Procedures to the following parties in the form and manner described below:

  i.     Debtor will serve the Bidding Procedures Order and APA, via United States first-class mail, postage pre-paid on:

    1.     The United States Trustee;

    2.     All entities known by the Debtor to have expressed a *bona fide* interest in acquiring the Assets;

    3.     The Stalking Horse Bidder;

    4.     The Unsecured Creditors' Committee;

    5.     All entities known by the Debtor to have asserted a lien, claim, or encumbrance on or against any of the Assets; and

    6.     All applicable taxing authorities.

  ii.    Debtor will serve a notice of the Bidding Procedures Order and the Auction, via United States first-class mail, postage pre-paid on, in the form attached as **Exhibit 6D** to the Sale Motion, on all known creditors of the Debtor.

B.     <u>AUCTION</u>. In the event one or more Qualified Bids, other than the Stalking Horse Bid, is submitted as provided in the Bidding Procedures, the Auction will be held at the offices of Winegarden, Haley, Lindholm, Tucker and Himelhoch P.L.C., or such other place as may be designated by the Debtor, on February 2, 2021 and Debtor will file a notice promptly after the Auction setting forth the identity of the Winning Bidder. If no Qualified Bids

are received other than the Stalking Horse Bid, the Stalking Horse Bidder shall be the Winning Bidder.

C.   <u>OBJECTIONS TO SALE</u>. An objection to the Sale of the Assets to the Winning Bidder must be filed with the Court, and served on Debtor's counsel and the Winning Bidder's counsel so that it is received on or before **February 4, 2021 at 5:00 p.m. Eastern Time**.

<u>**ADMINISTRATIVE EXPENSE BAR DATE**</u>

51.   The above-captioned debtor and debtor in possession also moves the Court pursuant to sections 105 and 503 of title 11 of the United States Code and Rules 2002 and 9007 of the Federal Rules of Bankruptcy Procedure for entry of an order establishing the Administrative Claims Bar Date (as defined below) with respect to Administrative Claims (as defined below) that arise or accrue on or before February 8, 2021.

52.   After this case was filed, a general claims bar date of December 8, 2020. (the "General Bar Date") was established. This date represented the deadline by which any person or entity holding a claim against the Debtor that arose or was deemed to have arisen prior the petition date in the case must file a proof of claim against the Debtor, except for governmental claims. March 8, 2021 is the deadline by which any governmental unit holding a claim against the Debtor that arose or was deemed to have arisen prior to the petition date must file a proof of claim against the Debtor.

53.   As the Court is aware, Debtor is seeking authority to sell substantially all of its assets.

54.   Establishment of an Administrative Claims Bar Date will assist the Debtor in formulating a confirmable chapter 11 plan of liquidation, to the extent that one is proposed.

55.     Accordingly, the Debtor seeks entry of an order, in substantially the form of the language found in the proposed bidding procedures order, (a) establishing a bar date within 45 days of entry of the proposed order (or any order approving the relief requested herein) (the "Administrative Claims Bar Date"), by which the holders of Administrative Claims (as defined below) must file an application for the payment of an administrative expense claim with respect to any such Administrative Claims to the extent that such claims arise or accrue on or before February 8, 2021.

56.     The term "Administrative Claim" shall mean, as to or against the Debtor, (a) any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured and (b) any right to an equitable remedy for breach of performance if such breach gives rise to a payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, provided that such right to payment arises under section 503(b) of the Bankruptcy Code and first arose on or after the petition date in this case.

57.     For the avoidance of doubt, nothing in this Motion shall extend the deadlines established by the General Bar Date for certain administrative claims or by Local Bankruptcy Rule 3003-1 for any party with an administrative expense claim arising under section 503(b)(9) of the Bankruptcy Code for goods delivered and received by the Debtor in the twenty days prior to the petition date to file such claims against the Debtor.

20-48744-mlo    Doc 353    Filed 01/26/21    Entered 01/26/21 14:56:52    Page 18 of 31

58.     The Debtor proposes that each person or entity that holds or wishes to assert an Administrative Claim against the Debtor must file an application for allowance of their Administrative Claim prior to the Administrative Claims Bar Date.

59.     The Debtor proposes that a person, government unit or entity that fails to file an application for allowance of their Administrative Claim on or before the Administrative Claims Bar Date will be forever barred, stopped and enjoined from: (a) asserting its Administrative Claim against the Debtor, its estate and its property; (b) asserting any claim that is of a different nature or classification on account of such Administrative Claim; and (c) participating in any distribution or receiving any payment from the Debtor or its estate on account of such Administrative Claim.

60.     The Debtor further proposes that the Administrative Claims Bar Date shall not apply to the following Administrative Claims: (a) any Administrative Claims that (i) have been previously paid by the Debtor in the ordinary course of business or (ii) have otherwise been satisfied; and (b) any Administrative Claim of a party that has already properly and timely filed a Proof of Claim with the Clerk of the Bankruptcy Court for the Eastern District of Michigan with respect to such Administrative Claim; (c) Administrative Claims that have been incurred by the professional firms retained in this case pursuant to sections 327, 328, 363 or 1103 of the Bankruptcy Code and whose Administrative Claims are for compensation for services rendered or for reimbursement of expenses and indemnification incurred in this case; (d) any fees payable to the U.S. Trustee under 8 U.S.C. § 1930 or accrued interest thereon arising under 31 U.S.C. § 3717; (e) any claims arising under contracts assumed by the Debtor under section 365 of the Bankruptcy Code; (f) an Administrative Claim in connection with any Debtor in

Possession financing which was previously approved by Court order in this case, even if that financing may be entitled to administrative priority; and (g) any Administrative Claim for which a deadline has previously been set including, but not limited to, the General Bar Date and the deadline established by Local Bankruptcy Rule 3003-1 for any party with an administrative expense claim arising under section 503(b)(9) of the Bankruptcy Code which deadline has already passed.

61.     The Debtor believes that the proposed Administrative Claims Bar Date will capture all possible administrative claims as the closing of the sale of substantially all of Debtor's assets is expected to occur on or before February 8, 2021.

62.     Debtor requests that the Court order that an application for allowance of an Administrative Claim will be deemed filed only when an application for allowance is actually received by the Bankruptcy Court.

63.      Debtor further requests that the Court order that (a) all applications for allowance of an Administrative Claim shall be signed by the claimant or, if the claimant is not an individual, by an authorized agent of the claimant; (b) all applications shall be written in English and be denominated in United States currency; and (c) claimants must attach to the application any documents on which the claim is based (or, if such documents are voluminous, attach a summary) or an explanation as to why the documents are not available.

64.     Pursuant to Bankruptcy Rule 2002(a)(7), no later than one business day after the entry of the proposed order (or any order establishing the Administrative Claims Bar Date), the Debtor, shall serve a copy of the order establishing the deadline and associated requirements by ECF electronic notice or by first-class mail, postage

prepaid, on the following parties: (i) the Office of the United States Trustee; (ii) counsel for the Committee; (iii) all persons or entities that have requested notice of the proceedings in this case; (iv) all persons or entities that have filed claims against the Debtor; (v) all known creditors and other known holders of claims against Debtor as of the date of the entry of the proposed order (or any order establishing the Administrative Claims Bar Date), including all persons or entities listed in the Debtor's schedules of assets and liabilities as holding claims against Debtor; (vi) all parties to executory contracts and unexpired leases of the Debtor; (vii) all current employees and all persons employed by the Debtor in the past year; (vii) the Internal Revenue Service, the United States Attorney's Office for the Eastern District of Michigan, all taxing authorities for the jurisdictions in which the Debtor currently conducts business; and (ix) all other parties in the Debtor's creditor matrix not included above.

## RELIEF REQUESTED

65.     By this Motion, Debtor seeks entry of the Bidding Procedures Order, which approves the Bidding Procedures, the form and manner of notice of the Sale, the form and manner of the APA, the proposed Termination Fee, the Assumption and Assignment Procedures, and the scheduling and conducting of the Auction in connection with the Sale of Debtor's Assets. In addition, the Bidding Procedures Order establishes an Administrative Claims Bar Date and would schedule a hearing date for the Debtor to seek entry of the Sale Order, which would confirm and approve the Sale to the Winning Bidder free and clear of all liens, claims, encumbrances (except for the lien held by Manufacturers Capital) and the assumption and assignment of Assumed and Assigned Agreements.

## BASIS FOR RELIEF REQUESTED

### A. The Proposed Sale Is Authorized Under § 363 Of The Bankruptcy Code

66. Section 363(b)(1) of the Bankruptcy Code expressly allows a debtor-in-possession, after notice and a hearing, to "use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1).

67. Sales under 11 U.S.C. § 363(b) are common, with courts in the Sixth Circuit frequently addressing sale related issues. In approving a sale under 11 U.S.C. § 363(b), the Sixth Circuit Court of Appeals has held that there must be "some articulated business justification" supporting the decision to sell assets, and that a court must consider "all salient factors" pertaining to the proposed sale. *Stephens Industries, Inc. v. McClung*, 789 F.2d 386, 389 (6th Cir. 1986).

68. The proposed sale of the Assets to the Winning Bidder satisfies the applicable requirements of § 363. As set forth above, the Debtor has used its business judgment to arrive at its decision to sell the Assets. The Debtor made a good faith attempt at reorganization. In fact, Debtor believes that a reorganization would have occurred had outside circumstances not interfered with the process. Without a cash infusion, Debtor lacks the necessary capital to continue its operations and, therefore, has concluded in its business judgment that a competitive bidding process for its assets on a going-concern basis will provide the greatest return to its creditors.

69. In addition, the Bidding Procedures will result in fair and reasonable consideration being realized for the Assets because they are designed to maximize the value of the Assets. The Stalking Horse Bid submitted by Stalking Horse Bidder pursuant to the APA establishes a "floor" purchase price for the Assets and will serve as

a baseline bid that the Debtor will use to solicit other Qualified Bids from third parties. By testing the purchase price of the Stalking Horse Bid in the market, the Bidding Procedures and the Auction are designed to ensure that the Debtor maximize the value of the Assets.

70.     The Debtor seeks permission to sell the Assets free and clear of all liens, claims, interests and encumbrances (collectively, the "Liens"), with such Liens attaching to the applicable proceeds, except for the lien securing the Manufacturers Capital Indebtedness as defined in the Court's order of September 21, 2020 entitled "Final Order Authorizing Debtor's Use of Cash Collateral and Granting Adequate Protection to Secured Creditors" (the "Final Cash Collateral Order").   The Winning Bidder shall take title to the Assets subject to the lien securing the Manufacturers Capital Indebtedness. The Final Cash Collateral Order states that the amount of the Manufacturers Capital Indebtedness was $737,454.74 as of the Petition Date.

71.     Section 363(f) of the Bankruptcy Code states that property may be sold free and clear of any interest in property if:

i.      applicable nonbankruptcy law permits sale of such property free and clear of such interest;

ii.      such entity consents;

iii.      such interest is a lien and the price at which such property is sold is greater than the aggregate value of all liens on such property;

iv.      such interest is in bona fide dispute; or

v.      such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

72.     Only one of the requirements of § 363(f) must be satisfied, and as set forth

below, this requirement is met in this case.

73.     § 363(f)(5) of the Bankruptcy Code allows a debtor to sell property free

and clear of liens when a legal or equitable proceeding could compel the lienholder to

accept less than full money satisfaction for its interest. *See In re Grand Slam U.S.A.*,

178 B.R. 460, 462 (E.D. Mich. 1995) ("Thus, it is clear that Section 363(f)(5) allows

trustees of an estate to sell property free and clear of liens when 'a legal or equitable

proceeding' exists that will force the lien holder to accept less than full money

satisfaction for their interest.").

74.     There are numerous creditors in this case who could be compelled to

accept less than full money satisfaction for their interest. The most obvious example is

the same as that which was identified in *Grand Slam*: a cram down under Section

1129(b)(2)(A).

75.     Here, one or more additional subsections of § 363(f) will be satisfied as

follows:

> i.     Trion Solutions, Inc. and Trion Staffing Solutions, Inc. assert that they hold an all asset lien which encumbers the Debtor's assets. The Debtor and Committee assert that the alleged lien is unperfected and unenforceable against Debtor's assets. This issue has been briefed in connection with the cash collateral hearings in this case. (*See* Doc 143*) See also* Doc. (142); *See also* Doc. (138) These pleadings provide a sufficient basis to conclude that there is a factual and legal dispute as to the validity of these creditors' interests in the property of the Debtor.

> ii.    Manufacturers Capitol, a division of Commercial Credit Group, Inc., has a security interest in some of the equipment owned by Debtor. The Stalking Horse Bidder proposes to purchase the Assets subject to the lien of Manufacturers Capital, which secures its claim in the approximate amount of $737,454.74. As such, the Manufacturers Capital lien would not attach to the sale proceeds.

76.     Debtor proposes that any valid Liens attach to the sale proceeds received for the Assets with the same order of priority, validity, force and effect that such Lien had before the Sale. Disbursements to any creditor whose lien is subject to a dispute would necessarily be delayed until said dispute has been resolved.

77.     Debtor has disclosed that its equity owner is a member of the Stalking Horse Bidder. All other Qualified Bidders will likewise be required to disclose any connection to the Debtor.

78.     While the Bankruptcy Code does not define what is a "good faith purchaser," many courts, including the Sixth Circuit Court of Appeals, have adopted a traditional equitable definition of "one who purchases the assets for value, in good faith, and without notice of adverse claims." *See Made in Detroit, Inc. v. Official Comm. of Unsecured Creditors (In re Made in Detroit, Inc.)*, 414 F.3d 576, 581 (6th Cir. 2005) (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1197 (7th Cir. 1978)). Accordingly, in order to be considered a "good faith purchaser" under § 363(m), the purchaser "must demonstrate that it purchased the property 'in good faith' and that it did so 'for value.'" *In re Made in Detroit, Inc.*, 414 F.3d at 581 (quoting *Cumberland Farms Dairy, Inc. v. Nat'l Farmers' Org., Inc. (In re Abbotts Dairies of Penn., Inc.)*, 788 F.2d 143, 147 (3d Cir. 1986)). It is not expected that there will be any dispute that the Winning Bidder will tender substantial value for the Assets.

79.     In order to show a lack of good faith, the Sixth Circuit requires a showing of "fraud or collusion between the purchaser and the seller or the other bidders, or that the purchaser's actions constituted 'an attempt to take grossly unfair advantage of other bidders.'" *255 Park Plaza Assocs. Ltd. P'ship v. Conn. Gen. Life Ins. Co. (In re 255 Park*

*Plaza Assocs. Ltd. P'ship)*, 100 F.3d 1214, 1218 (6th Cir. 1996) (quoting *In re Onouli-Kona Land Co. v. Estate of Richards (In re Onouli-Kona Land Co.)*, 846 F.2d 1170, 1173 (9th Cir. 1988)) (additional citations omitted). Facts which could demonstrate lack of good faith are not present here. The sale of the Assets was openly disclosed by the filing of this Motion, and the Assets will be marketed. The purchase price will be market tested in an auction. Accordingly, it appears safe to conclude that any agreement with the Winning Bidder will be a result of arm's length and good faith negotiations between the parties undertaken without any collusive activity.

80.     Accordingly, the Winning Bidder will be a good faith purchaser within the meaning of § 363(m) of the Bankruptcy Code.

### B.     The Proposed Assumption and Assignment of Executory Contracts Complies with § 365 of the Bankruptcy Code

81.     To facilitate the sale of the Assets as outlined in this Sale Motion, Debtor seeks authority to assume and assign certain executory contracts and unexpired leases to the Winning Bidder to the extent required by the Winning Bid.

82.     Section 365 of the Bankruptcy Code authorizes a debtor to assume and assign an executory contract or unexpired lease, subject to the approval of the bankruptcy court, provided that any defaults under such executory contract or unexpired lease are cured and the assignee provides adequate assurance of future performance.

83.     A debtor's decision to assume or reject an executory contract or unexpired lease is examined under the business judgment standard. *See, e.g., In re Stable Mews Association, Inc.,* 41 B.R. 594, 596 (Bankr. S.D.N.Y. 1983); *Software Customizer v. Bullet Jet Charter (In re Bullet Jet Charter),* 177 B.R. 593, 601 (Bankr. N.D. Ill. 1995).

84.     The business judgment test "requires only that the trustee [or debtor in possession] demonstrate that [assumption or] rejection of the contract will benefit the estate." *In re Wheeling-Pittsburgh Steel Corp.,* 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987).

85.     Debtor believes that the purchase price for the Assets will be maximized if Debtor agrees to assume and assign to the Winning Bidder the Assumed and Assigned Agreements.

86.     Accordingly, Debtor's business rationale for seeking to assume and assign certain executory contracts is the same as their rationale for conducting the proposed Sale — Debtor believes that the sale of its Assets, including related valuable unexpired contract rights, will maximize the value of their estates for the benefit of its creditors.

87.     Debtor believes that all of the requirements under § 365 of the Bankruptcy Code for the assumption and assignment of the Assumed and Assigned Agreements will be satisfied by the Assumption and Assignment Procedures outline above.

88.     To the extent that defaults exist under any of the Assumed and Assigned Agreements, such defaults will be cured by the payment of the Cure Amounts by the Winning Bidder.

89.     Further, as required by the Bidding Procedures, the financial strength of each bidder will be evaluated before such bidder is allowed to participate in the Auction.

90.     Accordingly, Debtor believes that the Winning Bidder will be able to provide adequate assurance of future performance under each of the Assumed and Assigned Agreements.

### C. The Proposed Bidding Procedures Are Appropriate Under the Circumstances

91. It has long been recognized by bankruptcy courts that a competitive bidding process is the best way to realize the highest value that industry participants place on assets. *See, e.g., In re Bidermann Indus. U.S.A., Inc.,* 203 B.R. 547, 551 (Bankr. S.D.N.Y. 1997). The Bidding Procedures reflect an understanding of this principle by facilitating competitive bidding for the Assets.

92. The Bidding Procedures contain certain limitations on participants in the Auction, which are designed to maximize the efficiency of the Auction process.

93. By limiting participation in the Auction to Qualified Bidders, delineating requirements for being designated as a Qualified Bidder, and establishing an overbid requirement, the Bidding Procedures will discourage bidding by parties other than those with the financial capacity to purchase the Assets. Such requirements are not onerous and will likely not discourage legitimate Auction participants from submitting bids.

94. A debtor's business judgment is entitled to substantial deference with respect to the procedures used in selling assets of its estate. *See In re Integrated Resources, Inc.,* 147 B.R. 650, 656-57 (S.D.N.Y. 1992).

95. Here, the Bidding Procedures create a process for fully competitive bidding among the parties most likely to be interested in purchasing the Assets and will maximize the value of Debtor's estates by providing certain protections for Debtor's administrative, priority, and unsecured creditors.

**D.    The Administrative Claim Bar Date is appropriate and will facilitate an effective liquidation.**

96.    Sections 503(a) of the Bankruptcy Code provides that "an entity may timely file a request for payment of an administrative expense." 11 U.S.C. § 503(a). Pursuant to section 105 of the Bankruptcy Code, this Court may issue any order that is "necessary or appropriate" to carry out, among other things, the provisions of the Bankruptcy Code. These two provisions, when read together, support establishing the Administrative Claims Bar Date.

97.    Bankruptcy Rule 2002 establishes the requirements for notifying creditors of when to file proofs of claim, and Bankruptcy Rule 9007 authorizes this Court to designate the time, "if not otherwise specified, within which, the entities to whom, and the form and manner in which the notice shall be given." See Fed. Bankr. P. 9007. As such, this Court is authorized to establish the Administrative Claims Bar Date.

98.    The Debtor submits that the Administrative Claim procedures set forth herein are in substantial compliance with relevant sections of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules. The Debtor is proposing to provide the holders of potential Administrative Claims with at least 45 days' notice of the Administrative Claims Bar Date by mailing or otherwise serving the order establishing the Administrative Claims Bar Date to the relevant parties by first class mail or ECF service within one business day of the entry of the proposed order. Accordingly, the Debtor submits that it has satisfied all applicable notice requirements.

99.    Further, establishing the First Administrative Claims Bar Date will assist the Debtor in efficiently and expeditiously reconciling all Administrative Claims that may be asserted against the estate. The Administrative Claims Bar Date will also assist the

Debtor in formulating a confirmable chapter 11 plan of liquidation, to the extent that one is proposed by specifically establishing with certainty the number and amount of Administrative Claims that will be asserted against the Debtor's estate.

**E.     Reservation of Rights; Deadline Extensions**

100.    Debtor reserves the right to modify the Bidding Procedures or impose, at or before the Auction, additional customary terms and conditions on the sale of the Assets, including, without limitation, extending the deadlines set forth in the Bidding Procedures, modifying bidding increments, adjourning or canceling the Auction or Sale, all without further notice.

**F.     Request for Modification of Stay Imposed by Bankruptcy Rule 6004(h) and 6006(d)**

101.    Debtor requests that the stay imposed by Bankruptcy Rule 6004(h) and 6006(d) be modified such that any Sale Order entered by the Court shall be effective immediately upon entry.

102.    All parties in interest will receive notice of this Sale Motion and an opportunity to be heard. Accordingly, no harm will result from a waiver of the stay imposed by Bankruptcy Rule 6004(h) and 6006(d).

<u>**CONCLUSION**</u>

WHEREFORE, Debtor respectfully request that the Court grant this Sale Motion and (A) enter Bidding Procedures Order in the form of attached Exhibit 1, (B) enter the Sale Order following the Sale Hearing; and (C) award Debtor such other and further relief that Court deems just and proper.

Respectfully Submitted,

WINEGARDEN, HALEY, LINDHOLM,
TUCKER & HIMELHOCH, P.L.C.
Attorneys for the Debtor

Dated: January 26, 2021   By: <u>/s/ Zachary R. Tucker</u>
              **Zachary R. Tucker** (P-75263)

## EXHIBIT INDEX

| | |
|---|---|
| Exhibit 1 | Bidding Procedures Order |
| Exhibit 2 | Notice and Opportunity to Respond |
| Exhibit 3 | n/a |
| Exhibit 4 | Certificate of Service |
| Exhibit 5 | n/a |
| Exhibit 6A | APA |
| Exhibit 6B | Bidding Procedures |
| Exhibit 6C | Assumption and Assignment Notice |
| Exhibit 6D | Notice of Auction and Sale |