## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (the "Agreement") dated as of January 25, 2021, is by and between Lapeer Industries, Inc. (the "Seller") and Lapeer Industries Enterprises, LLC (the "Purchaser").

### RECITALS

1. Seller is the debtor in possession (the "Debtor") in a chapter 11 proceeding under the United States Bankruptcy Code, 11 USC §§ 101 et seq. (the "Bankruptcy Code"), pending as case no. 20-48744-mlo (the "Bankruptcy Case") in the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division at Detroit (the "Bankruptcy Court") commenced on August 5, 2020 (the "Petition Date").

2. Upon the terms and subject to the conditions set forth herein and as authorized under section 363 of the Bankruptcy Code, Purchaser desires to purchase from the Seller and Seller has agreed to sell to the Purchaser, all of the Debtor's right, title and interest in the Assets as that term is defined below, for $1,300,000.00 (the "Purchase Price"), payable as provided herein.

3. The closing of the contemplated Purchase, and Purchaser's and Seller's obligations under this Agreement, are contingent on the Bankruptcy Court's approval of the sale, and the parties acknowledge that no sale shall occur until the Bankruptcy Court enters its order approving such sale.

NOW, THEREFORE, in consideration of the above recitals and the mutual representations, covenants, warranties and agreements set forth in this Agreement, Purchaser and Seller hereby agree:

## ARTICLE I

## PURCHASE AND SALE OF ASSETS

1.1 **Agreement to Sell and Purchase Transferred Assets.** Subject to the terms and conditions of this Agreement, Seller agrees to sell, assign, convey and transfer to Purchaser and Purchaser agrees to purchase from Seller, all of the Seller's right title and interest in the Assets described below, free and clear of all liens, claims, encumbrances and other interests pursuant to Section 363 of the Bankruptcy Code.

## THE ASSETS

1.2 **Assets to Be Purchased.** The assets to be purchased consist of substantially all of Debtor's assets used in its businesses as more particularly described herein ("Assets"), including, but not limited to, Debtor's right to, title to and interest in the following:

    a. All tangible personal property, leasehold improvements, installations, fixtures, trade fixtures, equipment, fittings, furniture, furnishings, inventory, office equipment and supplies (collectively, "Tangible Property") located and used at each Location, excluding tangible personal property included in the Excluded Assets;

    b. All right, title and interest of the Debtor and its bankruptcy estate in the real property lease (the "Real Property Lease") related to Debtor's location commonly known as 3140 John Conley Drive, Lapeer, MI 48446 and the personal property leases (the "Personal Property Lease") described in Exhibit A of the "Bidding Procedures" documents, as well as all right, title, and interest of the Debtor and its bankruptcy estates in the property that is the subject of the Personal Property Leases;

2

c. All computers, computer equipment, computer hardware/software, servers, fiber optic lines, copiers, security systems, machines, keys, codes and all other equipment owned by Debtor;

d. All telephone numbers registered to the Debtor; e-mail addresses, domain names, fax numbers, websites, provided, however, that the Buyer acknowledges that the Debtor will utilize the telephone numbers in the ordinary course of business prior to the Closing Date;

e. All of Seller's intellectual property and all rights to any intellectual property of any other person licensed to the Debtor pursuant to any contract including names, domain names, trademarks, registrations, websites, assumed names, logos masks, copyrights, and patents;

f. All contracts and all rights of the Debtor under any contracts, including without limitation, any right to any accounts receivable related to or arising from any of the contracts;

g. All express or implied guarantees, warranties, representations, covenants, indemnifications, rights, claims, counterclaims, defenses, credits, causes of action or rights of set off against third parties relating to the Assets (including for the avoidance of doubt, those arising under, or otherwise relating to, the contracts to be purchased but expressly excluding the Avoidance Actions (as defined in the "Bidding Procedures" document) or liabilities, including without limitation, rights under vendors' and manufacturers' warranties, indemnities, and guarantees;

3

h.  To the extent transferrable under applicable law or with the consent of any third party, if necessary, which consent has been obtained, all licenses, permits, certifications and approvals from all permitting, licensing, accrediting and certifying agencies, all pending applications for any of the foregoing, and the rights to all data and records held by such permitting, licensing and certifying agencies;

i.  All documents consisting of purchasing and sales records, accounting records, business plans, budgets, costs and pricing information, customer and vendor lists, client records wherever located related to the business, other than those documents that are Excluded Assets as identified in the "Bidding Procedure" Document;

j.  Debtor's current employees are leased from a third party; however, retention of employees is possible. Accordingly, all personnel files for employees the purchaser intends to retain will also be included, except as required under law; provided, however, that the Debtor has the right to retain copies at its expense to the extent required by law;

k.  All prepaid expenses relating to the Assets;

l.  Any rights, claims or causes of action of the Debtor, except for those identified as related to, or arising under, the Excluded Assets section of the "Bidding Procedures" Document;

m.  All customer contracts for services for which performance is due or to become due by the Debtor at any location of the Debtor's that is operating as of the date of closing;

4

n. Any claim, right or interest of Debtor in or to any refund or rebate relating to the Assets;

o. All insurance claims or proceeds arising out of or related to the damage, destruction or loss of any Assets to the extent any damage, destruction or loss remains unrepaired or not replaced at the Closing;

p. Any avoidance actions, including without limitation, voidable transaction actions, fraudulent transfer actions and preference actions, and claims and proceeds of such avoidance actions and claims under Chapter 5 of the Bankruptcy Code and non-Bankruptcy law (collectively, the "Avoidance Actions");

q. Claims against officers, directors, managers, members, or other insiders of Debtor;

r. All tax refunds; and

s. Insurance policies with Debtor as named insured and all insurance proceeds and insurance claims of Debtor or to which Debtor is entitled, including Debtor's directors' and officers' liability insurance policy.

1.3 **Excluded Assets.** The Purchase does not include any of the following (collectively, the "Excluded Assets") as listed in the "Bidding Procedures" Document.

   a. Any and all rights under all contracts that are not assumed by the Purchaser;

   b. Any (i) confidential personnel and medical records pertaining to any employee who is not hired by the buyer; (ii) books and records that Debtor is required by law to retain, provided that the buyer shall have the right to

make copies of any portions of such retained books and records that relate to the business or any of the Assets; and (iii) minute books, stock and membership ledgers and stock and membership certificates of the Debtor;

c. All rights under or pursuant to all warranties (express or implied), representations and guarantees made by third parties relating to any Excluded Assets;

d. All claims that Debtor may have against any person or entity solely with respect to any Excluded Assets or which solely constitute a defense against any of the Excluded Liabilities;

e. All Employees Plans / Agreements and assets related thereto, including the Debtor's rights, title and interests in any (i) assets related to a defined benefit or contribution retirement plan, and (ii) assets related to non-qualified deferred compensation plan;

f. All membership interests of the Debtor and all equity securities owned or held by any members of Debtor;

g. For the avoidance of doubt, all real property and personal property which was previously used or being used by the Debtor but not owned by the Debtor is expressly designated as an "Excluded Asset"; and

h. For the avoidance of doubt, any interest, including but not limited to any leasehold interest which relates to any real property other than 3140 John Conley Drive, Lapeer, MI 48446 is an "Excluded Asset", as Debtor asserts it has no interest in any real estate other than the lease with respect to 3140 John Conley Drive, Lapeer, MI 48446.

6

1.4   **Excluded Liabilities.** Except as expressly provided herein, Purchaser is not assuming any liability or obligation of the Debtor and/or Seller of whatever nature. All such liabilities and obligations shall be retained by and remain liabilities and obligations of the Debtor's Estate and/or the Seller.

1.5   **Sale Free and Clear of All Liens, Claims, Encumbrances and Other Interests.** The Assets shall be transferred to the Purchaser, free and clear of all liens, claims, encumbrances, and other interests of record, <u>except for</u> the lien securing the Manufacturers Capital Indebtedness as defined in the Court's order of September 21, 2020 entitled "Final Order Authorizing Debtor's Use of Cash Collateral and Granting Adequate Protection to Secured Creditors" (the "Final Cash Collateral Order"). Purchaser shall take title to the Assets subject to the lien securing the Manufacturers Capital Indebtedness. The Final Cash Collateral Order states that the amount of the Manufacturers Capital Indebtedness was $737,454.74 as of the Petition Date. For the avoidance of doubt, Lapeer Industries Enterprises, LLC expressly assumes the risk that Manufacturers Capital may not agree to terms it may propose for the repayment of the claim of Manufacturers Capital, and acknowledges that it will not be entitled to terminate the Purchase Agreement for reason of its failure to obtain the agreement of Manufacturers Capital to such terms.

1.6   **Method of Conveyance.** Upon Closing, title to the Assets shall pass to Purchaser and Seller shall deliver to Purchaser any assignments, bills of sale or similar documents sufficient to convey to Purchaser title to all the Assets, as well as such other instruments of conveyance as Purchaser may reasonably deem necessary (both at and after the Closing) to effect or evidence the transfers contemplated herein.

ARTICLE II

2.1 **Purchase Price – Payment.** The Purchase Price shall be paid as follows:

2.1.1 The deposit in the amount of $100,000.00 previously tendered by Daniel Schreiber and held by Winegarden, Haley, Lindholm, Tucker & Himelhoch, PLC is credited to Purchaser and shall be held as Purchaser's deposit subject to the terms of this Agreement. Daniel Schreiber has executed this Agreement to acknowledge his transfer to Purchaser of all rights to the deposit.

2.1.2 The sum of $1,200,000.00 will be paid by Purchaser at Closing.

2.2 **Retention of Refund or Deposit.**

2.2.1 If this Agreement is terminated by the Seller as a result of the willful failure by Purchaser to close the transactions contemplated by this Agreement or to otherwise perform any of its obligations under this Agreement, the Seller shall be entitled to retain the Deposit.

2.2.2 If this Agreement is terminated by any party for any other reason or if for any reason the Closing does not occur on or before the Closing Deadline, not later than two (2) business days following such termination date or Closing Deadline, as applicable, Seller shall refund to Purchaser the Deposit by wire transfer of immediately available funds to an account or accounts specified by Purchaser.

### ARTICLE III
### CLOSING

3.1 **Closing.** The sale shall be effected by a closing of the sale and purchase of the assets (the "Closing") within 10 business days of the Bankruptcy Court's Order approving the sale becoming a final order under the Bankruptcy Code.

3.2 **Seller's Deliveries.** At Closing, Seller will deliver to Purchaser possession of the Assets and all other agreement or documents required to be delivered to Purchaser pursuant to

8

the terms of this Agreement.

## ARTICLE IV
## REPRESENTATIONS AND WARRANTIES OF SELLER

4.1 **Enforceability.** Subject to the entry of the Sale Order, this Agreement constitutes Seller's valid and legally binding obligation, enforceable in accordance with its terms.

4.2 **Title and Authority to Sell.** Seller warrants and agrees that it serves as debtor in possession in the Bankruptcy Case and that it has full authority of the Bankruptcy Court to sell the assets of the Debtor in accordance with the terms of this Agreement, and subject to Bankruptcy Court approval, free and clear of all liens, claims, encumbrances to the fullest extent permitted by Section 363 of the Bankruptcy Code, "as is, and where is" without representation or warranty other than any set forth in this Agreement.

## ARTICLE V
## REPRESENTATIONS AND WARRANTIES OF PURCHASER

Purchaser hereby represents and warrants to Seller that all the following statements are true, accurate and correct as of the date of execution of this Agreement and shall be true and correct as of the Closing Date:

5.1 **Organization.** Purchaser will be a duly organized limited liability company, validly existing, and in good standing under the laws of the State of Michigan and will have the requisite power and authority to enter into this Agreement and any other documents that Purchaser is required to execute and deliver hereunder to perform its obligations under this Agreement. Its registration with the State of Michigan Department of Licensing and Regulatory Affairs is pending as of the date of this Agreement.

5.2 **Authorization.** The execution, delivery and performance of this Agreement and all other documents related thereto, either executed or to be executed pursuant to the Agreement

9

by Purchaser, and the consummation of the transactions herein, have been duly authorized by all necessary actions on the part of the Purchaser.

5.3     **Enforceability.** This Agreement constitutes the valid and legally binding obligation of the Purchaser, enforceable in accordance with its terms, except as such enforceability may be limited by equitable principles and applicable bankruptcy or similar laws relating to or affecting the rights of creditors.

## ARTICLE VI
## COVENANTS OF SELLER

Seller covenants as follows:

6.1     **Conduct Outside the Ordinary Course of Business.** Without written consent of the Purchaser, from the date of this Agreement through the Closing, Seller will not with respect to the Assets:

        A.     Sell, lease, transfer or encumber or assign any of the Assets.

        B.     Engage in any practice, take any action, or enter into any transaction with respect to the Assets.

6.2     **Preservation of "going concern" value.** Seller will continue operations as they existed on January 11, 2021 so as to preserve the "going concern" value, if any, of the Assets.

6.3     **Obtaining Sale Order of the Bankruptcy Court.** Seller shall take all steps reasonably necessary or appropriate to obtain the entry by the Bankruptcy Court of the Sale Order in a form acceptable to Purchaser in its sole discretion and as describe below. Purchaser acknowledges and agrees that the Seller intends to conduct an auction sale of the Assets, subject to higher and better bids for same and thus this Agreement is contingent upon the Purchaser submitting the highest and best bid for the Assets.

10

## ARTICLE VII
## COVENANTS OF BOTH PARTIES

7.1  **Costs and Expenses.** Purchaser and Seller shall each bear their own costs and expenses in connection with the negotiation, purchase and approval of the purchase of the Assets and any transaction related thereto.

## ARTICLE VIII
## CONDITIONS TO CLOSING

8.1  **Conditions to Purchaser's Obligations.** Purchaser's obligations to purchase the Assets under this Agreement is subject to the satisfaction of each of the following conditions precedent:

   A.  **Compliance with Covenants.** Seller shall have complied with the covenants contained in this Agreement, and shall otherwise not be in default under this Agreement.

   B.  **Instruments of Transfer.** Purchaser or its nominee, shall have received deeds, bills of sale and such other duly executed instruments of transfer, conveyance, and assignments to Purchaser of the Assets as contemplated by this Agreement.

   C.  **Bankruptcy Court's Approval of Sale.** Seller shall have obtained a final order from the Bankruptcy Court in a form and content satisfactory to Purchaser in its sole discretion approving the transactions contemplated herein (the "Sale Order"). Among other things, the Sale Order shall (a) approve the sale of the Assets to Purchaser on the terms and conditions set forth in this Agreement and authorize the Seller to proceed with this transaction, (b) include a specific finding that Purchaser is a good faith purchaser of the Assets, (c) state that the sale of the Assets to Purchaser shall be free and clear of all liens, claims, interests, security interest, encumbrances of any nature whatsoever to the fullest extent permitted by Section 363 of

11

the Bankruptcy Code, (d) provide waiver of stays contemplated by Rule 6004(g) and (e) include specific findings that the Debtor has title to the Assets and that (f) Trustee has full and complete authority of the Bankruptcy Court to sell the Assets.

8.2 **Conditions to Seller's Obligations.** Seller's obligation to sell the Assets and otherwise consummate the transactions contemplated under this Agreement at Closing is subject to the satisfaction of each of the following conditions precedent, except as Seller may expressly waive the same in writing and in its sole discretion:

A. **Accuracy of Representations and Warranties on Closing Date.** The representations and warranties made herein by the Purchaser in this Agreement shall be true and correct in all material respects, and not misleading in any material respect, on and as of the date given, and on and as of the Closing Date with the same force and effect as though such representations and warranties were made on and as of the Closing Date.

B. **Deliveries.** Purchaser shall have delivered to Seller at Closing any executed documents required under this Agreement and the Purchase Price.

C. **Bankruptcy Court Approval.** The Bankruptcy Court shall have entered the Sale Order and the implementation, operation, or effect of the Sale Order shall have not been stayed and the Sale Order having become a final order.

## ARTICLE IX
## TERMINATION

9.1 **Right to Terminate Agreement.** This Agreement may be terminated and the transactions contemplated herein may be abandoned at any time before closing:

A. By mutual written agreement of the Purchaser and Seller;

B. By Purchaser, if any material condition to closing has not been satisfied or if Seller fails to comply or perform an material covenant of this Agreement and Seller is unable,

12

20-48744-mlo    Doc 353-6    Filed 01/26/21    Entered 01/26/21 14:56:52    Page 12 of 15

in a reasonable time, to satisfy such condition or covenant;

9.2   **Effect of Termination.** Upon the termination of this Agreement in accordance with this Section, all rights and obligations of Purchaser and Seller will terminate without any liability of one party to the other party.

## ARTICLE X
## MISCELLANEOUS

10.1   **Notices.** All notices, requests, demands, waivers and other communication required or permitted to be given under this Agreement shall be in writing and will deemed to be duly given if: (a) delivered personally; (b) mailed by first class or certified mail, return receipt requested, postage prepaid; (c) sent by a national next day or overnight mail or courier service; (d) sent by confirmed facsimile transmission; or (e) sent by confirmed electronic mail. All such notices, requests, demands, waivers and other communication will be deemed to have been received: (i) if by personal delivery, upon delivery; (ii) if by certified or registered mail, on the third business day after mailing thereof; (iii) if by next day or overnight courier, on the business day after such mailing; or (iv) if by confirmed facsimile or email, upon receipt.

| | |
|---|---|
| To the Purchaser: | Lapeer Industries Enterprises, LLC<br>Attention: Mr. Robert Kattula<br>14100 23 Mile Road<br>Shelby Township, MI 48315 |
| With a copy to: | Thomas R. Morris, Esq.<br>Silverman & Morris, P.L.L.C.<br>32300 Northwestern Hwy., Suite 215<br>Farmington Hills, MI 48334 |
| To the Seller: | Lapeer Industries, Inc.<br>Attention: Mr. Daniel Schreiber<br>3140 John Conley Drive<br>Lapeer, MI 48446. |
| With a copy to: | Zachary Tucker, Esq.<br>Weingarden, Haley, Lindholm, Tucker & Himmelhoch, PLC |

13

9460 Saginaw Road, Suite A
Grand Blanc, MI 48439

10.2 **Consent to Jurisdiction**.

A. THE BANKRUPTCY COURT WILL HAVE JURISDICTION OVER ALL MATTERS, INCLUDING ANY LEGAL ACTION, SUIT OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, ANY RELATED AGREEMENT OR THE TRANACTIONS CONTEMPLATED HEREBY OR THEREBY AND THE INTERPRETATION, IMPLEMENATION OR ENFORCEMENT OF THIS AGREEMENT, ANY RELATED AGREEMENT, OR THE INTERPRETATION, IMPLEMENATION OR ENFORCEMENT OF ANY RELATED AGREEMENT AND THE PARTIES HERTO IRREVOCABLY SUBMIT AND CONSENT TO SUCH JURISDICITON.

B. Purchaser and Seller consent to venue of any action, suit or proceeding arising out of this Agreement in the Bankruptcy Court. If a court finds that subject matter jurisdiction is not available in the Bankruptcy Court, Purchaser and Seller hereby agree to submit any and all disputes arising out of this Agreement to the jurisdiction and venue of the United States District Court for the Eastern District of Michigan, Southern Division.

IN WITNESS WHEREOF, the parties hereto have executed this Asset Purchase Agreement as of the day and year first written above.

| PURCHASER: | SELLER: |
|---|---|
| **LAPEER INDUSTRIES ENTERPRISES, LLC** | **LAPEER INDUSTRIES, INC.** |
| By: Robert Kattula | By: Daniel Schreiber |
| Its: managing member | Its: President |

14

_____
Daniel Schreiber (executed to acknowledge the
assignment by him to Purchaser of all rights to the
deposit previously paid by him.)

15

20-48744-mlo    Doc 353-6    Filed 01/26/21    Entered 01/26/21 14:56:52    Page 15 of 15