# BIDDING PROCEDURES

In re: Lapeer Industries, Inc.
(Bankr. E.D. Mich. Case no. 20-48744)

1. **ASSETS**.

    A. Lapeer Industries, Inc. (the "Debtor") has determined that it can obtain the highest and best value for its assets by selling its businesses as a going-concern.

    B. The assets to be sold consist of substantially all of Debtor's assets used or useful in its businesses as more particularly described herein ("Assets"), including, but not limited to, Debtor's right, title and interest to the following:

    i. All tangible personal property, leasehold improvements, installations, fixtures, trade fixtures, equipment, fittings, furniture, furnishings, inventory, office equipment and supplies (collectively, "Tangible Property") located and used at each Location, excluding tangible personal property included in the Excluded Assets.

    ii. All right, title and interest of the Debtor and its bankruptcy estate in the real property lease (the "Real Property Lease") related to Debtor's location commonly known as 3140 John Conley Drive Lapeer, MI 48446 and the personal property leases (the "Personal Property Lease") described in Exhibit A, as well as all right, title and interest of the Debtor and its bankruptcy estates in the property that is the subject of the Personal Property Leases;

    iii. All computers, computer equipment, computer hardware/software, servers, fiber optic lines, copiers, security systems, machines, keys, codes and all other equipment owned by Debtor.

    iv. All telephone numbers registered to the Debtor; e-mail addresses, domain names, fax numbers, websites provided however, that the Buyer acknowledges that the Debtor will utilize the telephone numbers in the ordinary course of business prior to the Closing Date;

    v. All of Seller's intellectual property and all rights to any intellectual property of any other person licensed to the Debtor pursuant to any contract including names, domain names, trademarks, registrations, websites, assumed names, logos, masks, copyrights, and patents;

    vi. All contracts and all rights of the Debtor under any contracts, including without limitation, any right to any accounts receivable related to or arising from any of the contracts;

    vii. All express or implied guarantees, warranties, representations, covenants, indemnities, rights, claims, counterclaims, defenses, credits, causes of action or rights of set off against third parties relating to the Assets (including, for the avoidance of doubt, those arising under, or otherwise relating to the contracts to be purchased but expressly excluding the Avoidance Actions (as defined below)) or liabilities, including without limitation, rights under vendors' and manufacturers' warranties, indemnities, and guaranties;

    viii. To the extent transferrable under applicable law or with the consent of any third party, if necessary, which consent has been obtained, all licenses, permits, certifications and approvals from all permitting, licensing, accrediting and certifying agencies, all pending

applications for any of the foregoing, and the rights to all data and records held by such permitting, licensing and certifying agencies;

ix. All goodwill of the business as a going concern and all other intangible properties of the business;

x. All documents consisting of purchasing and sales records, accounting records, business plans, budgets, cost and pricing information, customer and vendor lists, client records wherever located related to the business, other than those documents that are Excluded Assets as identified below;

xi. Debtor's current employees are leased from a third party, however retention of employees is likely possible. Accordingly, all personnel files for employees the purchaser intends to retain will also be included, except as required under Law; provided, however, that the Debtor has the right to retain copies at their expense to the extent required by Law.;

xii. All prepaid expenses relating to the Assets;

xiii. Any rights, claims or causes of action of the Debtor, except for those identified as, related to, or arising under, Excluded Assets;

xiv. All customer contracts for services for which performance is due or to become due by the Debtor at any location of the Debtor that is operating as of the date of closing;

xv. Any claim, right or interest of Debtor in or to any refund, or rebate relating to the Assets;

xvi. All insurance claims or proceeds arising out of or related to the damage, destruction, or loss of any Asset to the extent any damage, destruction or loss remains unrepaired or not replaced at the Closing.

xvii. Any avoidance actions, including without limitation, voidable transaction actions, fraudulent transfer actions and preference actions, and claims and proceeds of such avoidance actions and claims under Chapter 5 of the Bankruptcy Code and non-Bankruptcy law (collectively, the "Avoidance Actions");

xviii. Claims against officers, directors, managers, members, or other insiders of Debtor;

xix. All tax refunds; and

xx. Insurance policies with Debtor as named insured and all insurance proceeds and insurance claims of Debtor or as to which Debtor is entitled, including Debtor's directors' and officers' liability insurance policy;

C. The Assets shall not include any of the following (collectively, the "Excluded Assets"):

i. Any and all rights under all contracts that are not assumed by the Asset purchaser;

ii. Any (i) confidential personnel and medical records pertaining to any employee who is not hired by the buyer; (ii) books and records that Debtor is required by law to retain; provided, that the buyer shall have the right to make copies of any portions of such retained books and records that relate to the business or any of the Assets, and (iii) minute books, stock and membership ledgers and stock and membership certificates of the Debtor;

iii. All rights under or pursuant to all warranties (express or implied), representations and

  guarantees made by third parties relating to any Excluded Assets;

 iv. All claims that Debtor may have against any person or entity solely with respect to any Excluded Assets or any Excluded Liabilities;

 v. All Employee Plans/Agreements and assets related thereto, including the Debtor's rights, title and interests in any (i) assets related to a defined benefit or defined contribution retirement plan, and (ii) assets related to non-qualified deferred compensation plan;

 vi. All membership interests of the Debtor and all equity securities owned or held by any members of Debtor;

 vii. For the avoidance of doubt, all real property and personal property which was previously used or is being used by the Debtor but not owned by the Debtor is expressly designated as an Excluded Asset; and

 viii. For the avoidance of doubt, any interest, including but not limited to any leasehold interest, which relates to any real property other than 3140 John Conley Drive Lapeer, MI 48446 is an Excluded Asset as Debtor asserts it has no interest in any real estate other than the lease with respect to 3140 John Conley Drive Lapeer, MI 48446.

2. **NOTICE OF AUCTION AND SALE.**

 A. Within one (1) day after entry of an order ("<u>Bidding Procedures Order</u>") approving these Bidding Procedures, Debtor will provide notice of the Bidding Procedures to the following parties ("<u>Notice Parties</u>") in the form and manner described below:

  i. Debtor will serve the Bidding Procedures Order by mail, postage prepaid on:

   a. The United States Trustee;

   b. All entities that have executed a nondisclosure agreement in connection with the proposed sale of the Assets;

   c. The Stalking Horse Bidder if one is selected;

   d. Counsel to the Unsecured Creditors' Committee;

   e. Counsel to Trion Solutions, Inc. and Trion Staffing Solutions, Inc.

   f. Counsel to Manufacturers Capital, a division of Commercial Credit Group, Inc.

   g. All entities known by the Debtor to have asserted a lien, claim, or encumbrance on or against any of the Assets; and

   h. All applicable taxing authorities.

  ii. Debtor will also serve a notice of the Bidding Procedures Order and the Auction, by mail, postage prepaid, in the form of Exhibit 6D to the Sale Motion, on all known creditors of the Debtor.

3. **DUE DILIGENCE.**

 A. Parties interested in purchasing the Assets may obtain due diligence materials regarding the Assets from Debtor. Debtor shall promptly provide the Consultation Parties (as defined below)

with a list of the parties that contacted it.

B. Interested parties must execute a form nondisclosure agreement acceptable to Debtor ("NDA") before any due diligence materials will be provided. Parties that have previously executed an NDA do not need to execute a new NDA. All due diligence requests should be directed to Debtor's counsel, Zachary R. Tucker at ztucker@winegarden-law.com. Debtor will comply with other reasonable due diligence requests made by interested parties, and all due diligence must be completed by the Auction. The Debtor shall notify the Consultation Parties (as defined below) of any party making due diligence requests that has not previously made due diligence requests and if any such party has failed to enter into an NDA after five (5) days of the initial due diligence request.

4. **MINIMUM BID.**

   A. The aggregate consideration (the "Purchase Price") for the Assets shall be an amount of no less than $1,300,000.00 in cash, which amount excludes cure costs associated with assumed contracts and the liability associated with the Manufactures Capital indebtedness which the Stalking Horse Bidder intends to assume PLUS payment of all amounts owed in connection with DIP financing advances made by the Stalking Horse Bidder.

   B. On the Closing Date, the Winning Bidder shall wire immediately available funds in an amount equal to the amount described in its winning bid which shall be no less than $1,300,000.00 in cash plus all other amounts owed.

5. **QUALIFIED BIDDERS.**

   A. All bidders must be Qualified Bidders (as defined below) to participate at the Auction (as defined below).

   B. A "Qualified Bidder" is any entity that submits a Qualified Bid (as defined below) in accordance with these Bidding Procedures and includes Stalking Horse Bidder.

   C. A "Qualified Bid" is a written offer to purchase the Assets that complies with all of the requirements of the Bidding Procedures.

6. **DEADLINE TO SUBMIT QUALIFIED BIDS:** Any person or entity that wishes to submit a Qualified Bid must submit its bid so that it is actually received by Debtor's counsel no later than no later than 5:00 p.m. prevailing Eastern Time on February 1, 2021 ("Qualified Bid Deadline").

7. **WHERE TO SUBMIT BIDS**: Bids must be submitted by electronic mail to the e-mail addresses below of Debtor's counsel, counsel to the Official Committee of Unsecured Creditors ("Committee"), the Office of the United States Trustee, counsel for Trion Solutions, Inc. and Trion Staffing Solutions, Inc., and counsel for Manufacturers Capital, a division of Commercial Credit Group, Inc., and must include an address, telephone number, and electronic mail address at which the entity submitting the bid ("Proposed Bidder") may be contacted.

   A. Debtor's counsel:
   Zachary R. Tucker
   9460 S. Saginaw Road, Suite A
   Grand Blanc, MI 48439
   ztucker@winegarden-law.com

   B. Committee counsel:
   Marc N. Swanson
   150 West Jefferson, Suite 2500
   Detroit, MI 48226

    swansonm@millercanfield.com

  C. Office of the United States Trustee:
    Jill M. Gies
    Office of the United States Trustee
    211 W. Fort St., Ste. 700
    Detroit, MI 48226
    Jill.gies@usdoj.gov

  D. Counsel for Trion Solutions, Inc. and Trion Staffing Solutions, Inc.:
    Shannon L. Deeby
    151 S. Old Woodward Avenue, Suite 200
    Birmingham, MI 48009
    sdeeby@clarkhill.com

  E. Counsel for Manufacturers Capital, a division of Commercial Credit Group, Inc.:
    David M. Black
    One Towne Squire, Suite 1700
    Southfield, Michigan 48076
    dblack@sommerspc.com

8. **CONTENT OF QUALIFIED BIDS:** A Stalking Horse Bid is deemed to be a Qualified Bid submitted by a Qualified Bidder. All other Qualified Bids must include the following items (collectively, the "Bid Package"):

  A. An unconditional cash offer for the Assets that is not less than the sum of the $1,300,000.00.

  B. An executed confidentiality agreement in form and substance reasonably satisfactory to the Debtor.

  C. A signed asset purchase agreement that fully outlines the terms and conditions of the proposed purchase transaction.

  D. A designation of the executory contracts and unexpired leases that the Qualified Bidder desires to be assumed and assigned by the Debtor to the Qualified Bidder. A potential Qualified Bidder must make a good faith showing of adequate assurance of future performance with respect to any unexpired leases or executory contracts that are to be assumed and assigned to the Qualified Bidder. In addition to paying the cash purchase requirement any cure costs must be paid by the Qualified Bidder.

  E. A disclosure of the identity of each person or entity that will be bidding for the Assets and any connection with Debtor. Additionally, a disclosure of the identity of the person that would be designated to bid at the Auction on behalf of the Proposed Bidder.

  F. A binding and irrevocable offer.

  G. The audited (if in existence) or unaudited financial statements and/or other written evidence of a financing commitment or other evidence satisfactory to the Debtor, in consultation with Debtor's professionals, the Official Committee of Unsecured Creditors, Trion Solutions, Inc. and Trion Staffing Solutions, Inc., and Manufacturers Capital, a division of Commercial Credit Group, Inc. (collectively, the "Consultation Parties") of the financial ability of the Proposed Bidder to consummate the proposed transaction.

  H. A board/member resolution or written evidence that demonstrates to the reasonable satisfaction of the Debtor that the Proposed Bidder has obtained all corporate or other authority necessary for it to close and fund the proposed transaction and that the person(s) authorized to bid at the Auction on behalf of such entity are authorized to do so.

I.  A deposit in cash or other immediately available funds ("Deposit") to be wired into a bank account to be designated by Debtor, which Deposit must be received on or before the Qualified Bid Deadline and in the amount of not less than $100,000.00.

J.  The bid must not contain any contingencies and may not include any financial or due diligence contingencies.

K.  All bids must contemplate the purchase of Debtor's assets "AS IS AND WHERE IS." The signed purchase agreement must be consistent with this requirement and must not require Debtor to make any representations inconsistent with an "as is where is" transaction.

L.  All bids other than the Stalking Horse Bidder's bid must also provide for payment to the Stalking Horse Bidder of the entire outstanding balance owed in connection with the DIP financing provided by the Stalking Horse Bidder. For the avoidance of doubt, this amount must be paid in addition to the Qualified Bidder's bid amount.

The Debtor and the Committee, in consultation with the Consultation Parties, reserve the right to work with any potential bidder in advance of the Auction to cure any deficiencies in a bid that is not initially deemed to be a Qualified Bid. The Debtor will provide to the Consultation Parties copies of each Bid Package received from a proposed Qualified Bidder, as described in these Bidding Procedures. The Debtor, after consulting with the Consultation Parties, will determine if a proposed Qualified Bidder is, in fact, a Qualified Bidder.

9. **"AS IS, WHERE IS"; NO RELIANCE BY BIDDERS.** All entities seeking to be designated as Qualified Bidders shall be conclusively presumed to represent, warrant, and acknowledge as follows:

   A.  The Assets shall be sold on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by Debtor, its agents, or the bankruptcy estates.

   B.  All of Debtor's right, title, and interest in and to the Assets pursuant to the terms of the Sale Order shall be sold free and clear of all liens, claims, encumbrances, interests, restrictions, and other encumbrances of any kind or nature thereon to the full extent authorized under Bankruptcy Code §§ 363(f) and 365, with the same to attach to the net proceeds of the sale of the Assets according to their priority, <u>except for</u> the lien securing the Manufacturers Capital Indebtedness as defined in the Court's order of September 21, 2020 entitled "Final Order Authorizing Debtor's Use of Cash Collateral and Granting Adequate Protection to Secured Creditors" (the "Final Cash Collateral Order"). The Winning Bidder shall take title to the Assets subject to the lien securing the Manufacturers Capital Indebtedness. The Final Cash Collateral Order states that the amount of the Manufacturers Capital Indebtedness was $737,454.74 as of the Petition Date.

   C.  Each Qualified Bidder understands and is bound by the terms of these Bidding Procedures, and any order approving these Bidding Procedures.

   D.  Each Qualified Bidder has had an opportunity to conduct reasonable due diligence, if requested, and it has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or Assets in making its bid and has not relied upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the Assets or the accuracy or completeness of any information provided in connection with the Assets, the Bidding Procedures Order, or the Auction, except as expressly stated in the Bidding Procedures Order or in an executed asset purchase agreement.

   E.  Each Qualified Bidder has not colluded with any party with respect to its bid and has submitted

its bid in good faith and not by any means forbidden by law. Nothing herein shall be construed to prohibit joint bids, however.

10. **DESIGNATION OF QUALIFIED BIDS.**

    A. On or before February 2, 2020, at 12:00 p.m. Eastern Time, Debtor will, after consulting with the Consultation Parties, designate those submitted bids, if any, that are Qualified Bids.

    B. In its sole discretion, the Debtor may, after consulting with Consultation Parties, determine at the Auction that a previously Qualified Bidder has altered its bid in a way that causes it to no longer be a Qualified Bidder.

    C. If no Qualified Bids other than a Stalking Horse Bid are received by the Qualified Bid Deadline, Debtor will seek Bankruptcy Court approval of a sale of the Assets to the Stalking Horse Bidder.

11. **AUCTION**.

    A. If one or more Qualified Bids is received (in addition to the possible Stalking Horse Bid) by the Qualified Bid Deadline, the Auction will be conducted at the offices of Winegarden, Haley, Lindholm, Tucker, and Himelhoch, PLC, or such other place as may be designated by the Debtor, on February 2, 2021, commencing at 3:00 pm prevailing Eastern Time ("Auction"). Qualified Bidders may attend the Auction via remote video connection, provided that they contact the attorney for the Debtor by email to ztucker@winegarden-law.com at least seven (7) days prior to the auction to make arrangements for a remote appearance. Qualified Bidders appearing remotely will need to provide visual verification of their identities prior to being allowed to participate.

    B. Only representatives of Debtor, the Committee, the United States Trustee, Stalking Horse Bidder, any Qualified Bidder, and any entity holding a Lien will be entitled to attend the Auction.

    C. Debtor may announce at the Auction additional procedural, non-material rules for bidding and other procedures that are reasonable under the circumstances (e.g., regarding the amount of time allotted to make subsequent overbids) for conducting the Auction, so long as such rules are not inconsistent with the provisions of the Bidding Procedures Order, any order of the Court entered in connection herewith or the Bankruptcy Code.

    D. The conduct of the Auction may be transcribed, but transcription is not required.

    E. Following consultation with the Consultation Parties, Debtor shall designate, in their sole discretion, at the start of the Auction the Qualified Bid determined by the Debtor in the exercise of their business judgment to be the highest and best bid as the initial bid for the Assets ("Initial Qualified Bid").

    F. The first overbid above the Initial Qualified Bid and each subsequent overbid must be in the form of cash consideration and must be determined by Debtor to be equal in value to the sum of $50,000 ("Bidding Increment") above the immediately preceding Initial Qualified Bid or subsequent overbid (if applicable).

    G. Promptly after the conclusion of the Auction and after consultation with the Consultation Parties, Debtor will designate the highest or best Qualified Bid (taking into account all relevant factors, including, but not limited to, cash consideration, the terms and conditions of the proposed agreement, the aggregate value offered by the Qualified Bidder, the speed and certainty of consummation of a sale of the Assets to such Qualified Bidder), and the net proceeds that will be made available to the Debtor's bankruptcy estate upon a purported sale of the Assets ("Winning Bidder") and shall designate the next highest or otherwise best Qualified Bid ("Back-Up Bid") and the entity submitting the Back-Up Bid ("Back-Up Bidder").

H. Debtor will file a notice immediately after the Auction setting forth the identity of the Winning Bidder.

I. At the conclusion of the Auction, the party making the highest or otherwise best bid for the Assets shall be designated the Winning Bidder and the party submitting the second highest or otherwise best bid shall be designated the Back-Up Bidder.

J. If the Winning Bid is approved by the Court and the Winning Bidder fails to close, Debtor shall be authorized to close on the Back-Up Bid without further order of the Court.

12. **PRESENTATION OF WINNING BIDDER AND BACK-UP BID; ACCEPTANCE OF QUALIFIED BID ONLY UPON COURT APPROVAL**.

    A. A hearing shall occur on February 5, 2021, at which hearing Debtor shall seek entry of an order approving the sale of the Assets to the Winning Bidder ("Sale Order") and that is effective immediately upon entry, notwithstanding Bankruptcy Rule 6004(h).

    B. The Sale Order shall provide that, if the transaction with the Winning Bidder for sale of the Assets fails to close because of a breach or failure to perform on the part of the Winning Bidder, Debtor may consummate a sale of the Assets pursuant to the Back-Up Bid without further order of the Court.

    C. The Back-Up Bid of a Back-Up Bidder, including the Stalking Horse Bidder if said Stalking Horse Bid is the second highest and best bid, shall remain open and irrevocable until February 19, 2021 ("Outside Back-Up Date").

    D. A Qualified Bid, including any Winning Bid or Back-Up Bid, shall be deemed accepted by Debtor only when that Qualified Bid has been approved by the Court.

13. **TREATMENT OF DEPOSITS.**

    A. Any Qualified Bidder that submitted a Deposit and that is not designated at the Auction as having submitted the Winning Bid or the Back-Up Bid shall have its Deposit returned no later than two (2) business days after the designation of the Winning Bid.

    B. If a Qualified Bidder is the Back-Up Bidder, its deposit shall be returned to it within two (2) business days after the Outside Back-Up Date, unless its Back-Up Bid becomes the Winning Bid.

    C. Notwithstanding anything to the contrary in any agreement between a Qualified Bidder and Debtor or any other entity, if such Qualified Bidder fails to consummate a transaction approved pursuant to the Sale Order because of a breach or failure to perform on the part of such Qualified Bidder, such Qualified Bidder shall not be entitled to the return of its Deposit. Such Deposit shall be deemed forfeited and property of Debtor's estates, such Deposit shall be retained by Debtor's estates in partial satisfaction of any damages due to Debtor's estates as a result of such Qualified Bidder's failure to consummate the transaction, and such Deposit shall be deemed to be proceeds of the Sale. Debtor retains any and all rights to recover damages in excess of the Deposit from such Qualified Bidder.

14. **CLOSING.** The closing of the transactions contemplated by the Sale Motion ("Closing") shall take place remotely via electronic exchange of documents, on the date ("Closing Date") that is mutually agreed to by the Parties but in no event shall be no later than February 8, 2021, absent written agreement of the Parties.

15. **SALE HEARING.** A hearing ("Sale Hearing") to consider entry of the Sale Order will be held on

**February 5, 2021 at 3:00 p.m. (Eastern)** and shall be held by telephone before the Honorable Maria L. Oxholm (in accordance with her published practices).