**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

IN RE:

LAPEER INDUSTRIES, INC            Case No. 20-48744
                                        Chapter 11 proceeding

        Debtor.                    Judge: Maria L. Oxholm

_____/

**STIPULATION TO ENTRY OF ORDER (I) ESTABLISHING BIDDING PROCEDURES, (II) SCHEDULING AN AUCTION AND A SALE HEARING IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF DEBTOR'S ASSETS, (III) SETTING CERTAIN DATES AND DEADLINES IN CONNECTION THEREWITH, AND (IV) GRANTING RELATED RELIEF**

       The Debtor, Lapeer Industries, Inc., the Official Committee of Unsecured Creditors, Trion Solutions, Inc. and Trion Staffing Solutions, Inc., Manufacturers Capital, a division of Commercial Credit Group, Inc., and the Office of the United States Trustee ("the Parties") by and through their counsel, hereby stipulate and agree to the entry of the proposed Order: (I) Establishing Bidding Procedures, (II) Scheduling an Auction and a Sale Hearing in Connection with the Sale of Substantially All of Debtor's Assets, (III) Setting Certain Dates and Deadlines in Connection Therewith, and (IV) Granting Related Relief attached hereto as **Exhibit 1**. The Parties further stipulate and agree to the approval of the Bidding Procedures attached hereto as **Exhibit 2**, to the approval of the Notice of Auction and Sale attached hereto as **Exhibit 3**, to the approval of the Notice to Counterparties to Executory Contracts and Unexpired Leases attached hereto as **Exhibit 4,** and to the approval of the form of Asset Purchase Agreement attached as **Exhibit 5**. The Parties further state that the framework of a proposed settlement between the Parties, subject to final approval, is attached as **Exhibit 6**.

Approved as to form and content:

Winegarden, Haley, Lindholm,
Tucker & Himelhoch, P.L.C.

Miller Canfield Paddock & Stone

/s/ Zachary R. Tucker
Zachary R. Tucker (P-75263)
9460 S. Saginaw Rd, Suite A
Grand Blanc, MI 48439
(810) 579-3600
ztucker@winegarden-law.com

/s/ Marc N. Swanson
Marc N. Swanson (P71149)
Megan R. I. Baxter (P81945)
150 W. Jefferson Ave., Suite 2500
Detroit, MI 48226
(313) 496-8459
swansonm@millercanfield.com
baxter@millercanfield.com

Counsel for the Debtor

Counsel for the Official Committee of
Unsecured Creditors

CLARK HILL PLC

SOMMERS SCHWARTZ, P.C.

/s/ Shannon L. Deeby
Shannon L. Deeby (P60242)
151 S. Old Woodward Ave., Suite 200
Birmingham, MI 48009
(248) 988-5889
sdeeby@clarkhill.com

/s/ David M. Black
David M. Black (P25047)
One Towne Squire, Suite 1700
Southfield, Michigan 48076
(248) 355-0300
dblack@sommerspc.com

Counsel for Trion Solutions, Inc. and Trion
Staffing Solutions, Inc.

Counsel for Manufacturers Capital, a
division of Commercial Credit Group
Inc.

/s/ Jill Gies
Jill Gies (P56345)
211 E. Fort Street, Suite 700
Detroit, MI 48226
(313) 226-7999
Jill.Gies@usdoj.gov

Counsel for Andrew R. Vara, United States
Trustee, Regions 3 and 9

APPROVED AS TO EXHIBIT 6 ONLY:

/s/ Todd Courser
  Todd Courser (P69829)
455 S. Main St. Lapeer MI 48446

Counsel for Daniel Schreiber

**EXHIBIT 1**

IN RE:

LAPEER INDUSTRIES, INC                     Case No. 20-48744
                                           Chapter 11 proceeding

              Debtor.                      Judge: Maria L. Oxholm
_____/

**ORDER (I) ESTABLISHING BIDDING PROCEDURES,
(II) SCHEDULING AN AUCTION AND A SALE HEARING IN CONNECTION WITH
THE SALE OF SUBSTANTIALLY ALL OF DEBTOR'S ASSETS, (III) SETTING
CERTAIN DATES AND DEADLINES IN CONNECTION THEREWITH, (IV)
APPROVING THE FORM OF THE ASSET PURCHASE AGREEMENT, INCLUDING
THE TERMINATION FEE, AND (V) GRANTING RELATED RELIEF**

This matter having come before the Court on Debtor's Second Motion for Entry of an

Order (I) Approving Bidding Procedures, (II) Scheduling an Auction and a Sale Hearing in

Connection with the Sale of Substantially All of Debtor's Assets, (III) Establishing Dates and

Deadlines in Connection with the Sale, (IV) Approving the Form of the Asset Purchase

Agreement, and (V) Granting Related Relief; and for Entry of an Order (A) Authorizing the Sale

of Substantially All of Debtor's Assets Free and Clear of Liens, Claims, Encumbrances, and

Interests, and (B) Approving the Assumption and Assignment of Certain Executory Contracts

and Unexpired Leases, and (C) Granting Related Relief; and for Entry of an Order Establishing

an Administrative Claims Bar Date ("Sale Motion")[1] [Docket No. 353] and upon the Stipulation

to Entry of Order (I) Establishing Bidding Procedures, (II) Scheduling an Auction and a Sale

_____

[1] Capitalized terms used but not defined have the meanings given to them in the Sale Motion.

Hearing in Connection with the Sale of Substantially All of Debtor's Assets, (III) Setting Certain Dates and Deadlines in Connection Therewith, (IV) Approving the Form of the Asset Purchase Agreement, Including the Termination Fee, and (IV) Granting Related Relief (the "Stipulation"); proper notice of the Sale Motion having been provided to all parties entitled thereto as required by applicable law, and no other or further notice being required; objections to the entry of this Bidding Procedure Order having been resolved; the Court finding that (a) it has jurisdiction to enter this Bidding Procedures Order pursuant to 28 U.S.C. § 1334; and (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing to the Court that the relief granted by the Bidding Procedures Order is in the best interest of Debtor, its estate, and its creditors; the Court being otherwise fully advised on the premises;

**NOW THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      The Sale Motion is GRANTED, solely to the extent that it requests entry of this Bidding Procedures Order and as provided herein.

2.      All objections to the entry of this Bidding Procedures Order not settled, withdrawn, or otherwise resolved are overruled.

3.      Objections, if any, to the remaining relief requested in the Sale Motion and the entry of the proposed Sale Order must: (a) be in writing; (b) conform to any applicable requirements of the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and any applicable local rules of procedure of this Court; (c) set forth the name of the objecting party and the nature of any claims or interests held by such party against or in Debtor's estate or property; (d) state with particularity the legal and factual bases for the objection and the specific grounds therefore; and (e) be filed with the Clerk of the Court, and served on Debtor's counsel so as to be received, on or before **February 23, 2021** ("Sale Objection Deadline").

4.     Any person or entity that fails to make an objection by the Sale Objection Deadline is forever barred from asserting any objection to the entry of the Sale Order.

5.     A hearing ("Sale Hearing") to consider the remaining relief requested in the Sale Motion and the entry of the proposed Sale Order shall be held on **February 25, 2021 at 11:00 a.m. (Eastern)** and shall be held by telephone before the Honorable Maria L. Oxholm, (in accordance with her published practices).

6.     The Bidding Procedures attached to the Stipulation as Exhibit 2 are incorporated herein by reference and approved, and shall apply to the sale of the Assets.

7.     The Notice of Auction and Sale attached to the Stipulation as Exhibit 3 is incorporated herein by reference and approved.

8.     The proposed assumption and assignment notice ("Assumption and Assignment Notice") attached to the Stipulation as Exhibit 4 is incorporated herein by reference, approved, and deemed sufficient for all purposes, and no further notice shall be required.

9.     The form of Asset Purchase Agreement attached to the Stipulation as Exhibit 5 is approved and the Expense Reimbursement Fee set forth therein is also approved.

10.     The following Assumption and Assignment Procedures are approved and shall apply to the assumption and assignment by Debtor of certain executory contracts and unexpired leases ("Assumed and Assigned Agreements"):

    a.     By no later than one day after entry of this Bidding Procedures Order, the Debtor will file a schedule ("Cure Schedule") which will be attached to the Assumption and Assignment Notice, identifying (i) the Assumed and Assigned Agreements, to potentially be assumed and assigned to a Winning Bidder in the event of a Sale and (ii) the amount, if any, the Debtor believes is necessary to cure all monetary defaults and other defaults under such agreement pursuant to § 365 of the Bankruptcy Code ("Cure Costs").

b. Upon the filing of the Cure Schedule, the Debtor will serve the Cure Schedule and the Assumption and Assignment Notice on each of the non-debtor counterparties listed on the Cure Schedule by first class mail.

c. The Assumption and Assignment Notice will state that the Debtor is or may be seeking the assumption and assignment of the Assumed and Assigned Agreement and include (i) a description of each executory contract and unexpired lease that may be assumed and assigned in connection with the Sale, (ii) the deadline for objecting ("Cure/Assignment Objection") to the amount of the proposed Cure Costs related to any executory contract or unexpired lease is **February 24, 2020 at 5:00 p.m.** Eastern Time ("Cure/Assignment Objection Deadline") and (iii) the deadline for objecting ("Adequate Assurance Objection") to the ability of any Winning Bidder to provide adequate assurance of future performance under any Assumed and Assigned Agreement is **February 24, 2021 at 5:00 p.m.** Eastern Time ("Adequate Assurance Objection Deadline" and collectively with the Cure/Assignment Objection Deadline, the "Cure/Adequate Assurance Objection Deadlines").

d. Each Cure/Assignment Objection and/or Adequate Assurance Objection must be filed with the Bankruptcy Court and served on Debtor's counsel so that it is received by the applicable Cure/Adequate Assurance Objection Deadline.

e. If no objections are received with respect to any Assumed and Assigned Agreement, then the Cure Costs set forth in the Cure Schedule for such agreement will be binding upon the non-debtor counterparty to such agreement for all purposes and will constitute a final determination of the Cure Costs required to be paid by or on behalf of the Debtor in connection with the assumption and assignment of such agreement.

f. In addition, all counterparties to the Assumed and Assigned Agreements who fail to file an objection before the Cure/Adequate Assurance Objection Deadlines, as applicable, will be (i) forever barred from objecting to the Cure Costs or adequate assurance of future performance with respect to the Assumed and Assigned Agreements, and the Debtor and the Winning Bidder will be entitled to rely solely upon the Cure Cost set forth on the Cure Schedule, (ii) deemed to have consented to the assumption and assignment, and (iii) forever barred and estopped from asserting or claiming against the applicable Debtor or the Winning Bidder that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied or that there is any other objection or defense to the assumptions or assignment of the applicable Assumed and Assigned Agreement.

g.     The Debtor or the Winning Bidder may amend the Cure Schedule to remove any Assumed and Assigned Agreement at any time before such Assumed and Assigned Agreement is actually assumed and assigned pursuant to an order of the Court. The non-debtor party or parties to any such removed contract or lease will be notified of such exclusion by written notice mailed within one (1) business day after such amendment.

11.     Any timely filed and unresolved Cure/Assignment Objection and/or Adequate Assurance Objection will be heard at the Sale Hearing.

12.     The presence of an Assumed and Assigned Agreement on the Cure Schedule does not constitute an admission that such Assumed and Assigned Agreement is an executory contract or unexpired lease or that the Assumed and Assigned Agreement will be assumed, assigned, or both.

13.     Debtor shall provide notification pursuant to Section 2 of the Bidding Procedures by no later than one (1) day after entry of this Order.

14.     Nothing in this Order or otherwise shall affect any right which may exist in favor of any entity holding a valid and enforceable Lien from exercising any right afforded to such holder pursuant to § 363(k) of the Bankruptcy Code; provided however that if the Debtor receives an unconditional offer for the Assets that is equal to or greater than $1,250,000.00 in cash, then Trion Solutions, Inc., Trion Staffing Solutions, Inc., and Manufacturers Capital, a division of Commercial Credit Group, Inc., waive their respective rights to credit bid (if any) pursuant to 363(k) of the Bankruptcy Code.

15.     The Committee, Trion Solutions, Inc., Trion Staffing Solutions, Inc., and Manufacturers Capital, a division of Commercial Credit Group, Inc., reserve all rights and objections with respect to the approval of the Sale Motion.

16.     The Court retains jurisdiction to hear and determine all matters arising from or relating to the implementation and/or interpretation of this Order.

**EXHIBIT 2**

**BIDDING PROCEDURES**

In re: Lapeer Industries, Inc.
(Bankr. E.D. Mich. Case no. 20-48744)

1.   **ASSETS**.

   A.   Lapeer Industries, Inc. (the "Debtor") has determined that it can obtain the highest and best value for its assets by selling its businesses as a going-concern.

   B.   The assets to be sold consist of substantially all of Debtor's assets used or useful in its businesses as more particularly described herein and also including the interest of Schreiber Holdings, LLC as to the Locas Boring Mill only ("Assets"), including, but not limited to, Debtor's right, title and interest to the following:

   i.   All tangible personal property, leasehold improvements, installations, fixtures, trade fixtures, machinery, tooling and equipment including all items identified on Exhibit A to the Purchase Agreement between Business Company, LLC and Debtor (except item #163 of Exhibit A which is modified below), fittings, furniture, furnishings, inventory, materials including steel, aluminum, stainless, scrap, WIP, cars, trucks, trailers or rolling stock, office equipment and supplies wall to wall and floor to ceiling (collectively, "Tangible Property") located and used at each of Debtor's locations at 3140 John Conley Dr, Lapeer, MI 48446 and 400 McCormick Drive, Lapeer MI 48446. Exhibit A to the above referenced purchase agreement #163 shall be redefined as follows: all trailers, containers, and vessels (including contents) located at the above referenced locations excluding customer owned assets;

   ii.   All right, title and interest of the Debtor and its bankruptcy estate in the real property lease (the "Real Property Lease") related to Debtor's location commonly known as 3140 John Conley Drive Lapeer, MI 48446.;

   iii.   All computers, computer equipment, computer hardware/software, servers, fiber optic lines, copiers, security systems, machines, keys, codes and all other equipment owned by Debtor.

   iv.   All telephone numbers registered to the Debtor; e-mail addresses, domain names, fax numbers, websites, provided, however, that the Buyer acknowledges that the Debtor will utilize the telephone numbers in the ordinary course of business prior to the closing date;

   v.   All of Seller's intellectual property and all rights to any intellectual property of any other person licensed to the Debtor pursuant to any contract including names, domain names, trademarks, registrations, websites, assumed names, logos masks, copyrights, and patents;

   vi.   All contracts and all rights of the Debtor to accounts receivable related to or arising from debts or obligations owed by the Israeli Ministry of Defense (IMOD).

   vii.   All express or implied guarantees, warranties, representations, covenants, indemnifications, rights, claims, counterclaims, defenses, credits, causes of action or rights of set off against third parties relating to the Assets (including for the avoidance of doubt, those arising under, or otherwise relating to, the contracts to be purchased but expressly excluding all Avoidance Actions and Causes of Action (each as defined below)) or liabilities, including without limitation, rights under vendors' and manufacturers' warranties, indemnities, and guarantees except those which are expressly identified in the Excluded Assets section below;

   viii.   To the extent transferrable under applicable law or with the consent of any third party, if necessary, which consent has been obtained, all licenses, permits, certifications and approvals from all permitting, licensing, accrediting and certifying agencies, all pending

applications for any of the foregoing, and the rights to all data and records held by such permitting, licensing and certifying agencies;

ix.  All documents consisting of purchasing and sales records, accounting records, business plans, budgets, costs and pricing information, customer and vendor lists, client records wherever located related to the business, other than those documents that are Excluded Assets as identified below;

x.   Debtor's current employees are leased from a third party, however retention of employees is possible. Accordingly, all personnel files for employees the purchaser intends to retain will also be included, except as required under law; provided, however, that the Debtor has the right to retain copies at its expense to the extent required by law;

xi.  All prepaid expenses relating to the Assets;

xii. Any rights, claims or causes of action of the Debtor, except for those identified as related to, or arising under, the Excluded Assets section of these Bidding Procedures, including without limitation, the Avoidance Actions and Causes of Action;

xiii. All customer contracts for services for which performance is due or to become due by the Debtor at any location of the Debtor's that is operating as of the date of closing;

xiv. Any claim, right or interest of Debtor in or to any refund or rebate relating to the Assets;

xv.  All insurance claims or proceeds arising out of or related to the damage, destruction or loss of any Assets to the extent any damage, destruction or loss remains unrepaired or not replaced at the Closing.

xvi. All tax refunds; and

xvii. Insurance policies with Debtor as named insured and all insurance proceeds and insurance claims of Debtor or to which Debtor is entitled, including Debtor's directors; and officers' liability insurance policy.

C.   The Assets shall not include any of the following (collectively, the "Excluded Assets"):

i.   Any and all rights under all contracts that are not assumed by the Purchaser;

ii.  Any avoidance actions, including without limitation, voidable transaction actions, fraudulent transfer actions and preference actions, and claims and proceeds of such avoidance actions and all claims and causes of action under Chapter 5 of the Bankruptcy Code and non-Bankruptcy law and the proceeds of such actions ("collectively, the "Avoidance Actions");

iii. Claims against officers, directors, managers, and members, of the Debtor and any claims against any insider (as defined in the Bankruptcy Code) of the Debtor and any claims against Marvin Engineering Co., Inc. and any of its affiliates, owners, trusts, subsidiaries or related entities or related individuals, including without limitation, the Marvin Group and the Gerald M. Friedman Trust dated 4/24/08. (collectively, the "Causes of Action");

iv.  Any (i) confidential personnel and medical records pertaining to any employee who is not hired by the buyer; (ii) books and records that Debtor is required by law to retain, provided, that the buyer shall have the right to make copies of any portions of such retained books and records that relate to the business or any of the Assets; and (iii) minute books, stock and membership ledgers and stock and membership certificates of the Debtor;

v.   All rights under or pursuant to all warranties (express or implied), representations and guarantees

made by third parties relating to any Excluded Assets;

vi. All claims that Debtor may have against any person or entity solely with respect to any Excluded Assets or which solely constitute a defense against any of the Excluded Liabilities;

vii. All Employee Plans/Agreements and assets related thereto, including the Debtor's rights, title and interests in any (i) assets related to a defined benefit or contribution retirement plan, and (ii) assets related to non-qualified deferred compensation plan;

viii. All accounts receivable other than accounts receivable from IMOD;

ix. All membership interests of the Debtor and all equity securities owned or held by any members of Debtor;

x. Debtor's cash and cash equivalents, which includes but is not limited to amounts related to Debtor's customer TAG which may be held in escrow and the $100,000 deposit held by the Debtor's counsel from Daniel Schreiber;

xi. For the avoidance of doubt, all real property and personal property which was previously used or being used by the Debtor but not owned by the Debtor is expressly designated as an Excluded Asset; and

xii. For the avoidance of doubt, any interest, including but not limited to any leasehold interest, which relates to any real property other than 3140 John Conley Drive Lapeer, MI 48446 is an "Excluded Asset", as Debtor asserts it has no interest in any real estate other than the lease with respect to 3140 John Conley Drive Lapeer, MI 48446.

2. **NOTICE OF AUCTION AND SALE.**

A. Within one (1) day after entry of an order ("Bidding Procedures Order") approving these Bidding Procedures, Debtor will provide notice of the Bidding Procedures to the following parties ("Notice Parties") in the form and manner described below:

i. Debtor will serve the Bidding Procedures Order by mail, postage prepaid on:

    a. The United States Trustee;

    b. All entities that have executed a nondisclosure agreement in connection with the proposed sale of the Assets;

    c. The Stalking Horse Bidder;

    d. Counsel to the Unsecured Creditors' Committee;

    e. Counsel to Trion Solutions, Inc. and Trion Staffing Solutions, Inc.

    f. Counsel to Manufacturers Capital, a division of Commercial Credit Group, Inc.

    g. All entities known by the Debtor to have asserted a lien, claim, or encumbrance on or against any of the Assets; and

    h. All applicable taxing authorities.

ii. Debtor will also serve a notice of the Bidding Procedures Order and the Auction, by mail, postage prepaid, in the form of Exhibit 6D to the Sale Motion, on all known creditors of the Debtor.

3.     **DUE DILIGENCE.**

A.     Parties interested in purchasing the Assets may obtain due diligence materials regarding the Assets from Debtor. Debtor shall promptly provide the Consultation Parties (as defined below) with a list of the parties that contacted it.

B.     Interested parties must execute a form nondisclosure agreement acceptable to Debtor ("NDA") before any due diligence materials will be provided. Parties that have previously executed an NDA do not need to execute a new NDA. All due diligence requests should be directed to Debtor's counsel, Zachary R. Tucker at  ztucker@winegarden-law.com. Debtor will comply with other reasonable due diligence requests made by interested parties, and all due diligence must be completed by the Auction.

4.     **MINIMUM BID.**

A.     The aggregate consideration (the "Purchase Price") for the Assets shall be an amount of no less than $1,350,000.00 in cash, which amount excludes Cure Costs and Assumed Liabilities for pre-paid customer unperformed services. All Cure Costs must be paid by the purchaser and the Debtor has no liability for any such costs. For the avoidance of doubt, if no bids other than the bid of the Stalking Horse Bidder are received the purchase price paid shall be the amount set forth in the asset purchase agreement between Debtor and Business Company, LLC ("Stalking Horse Bidder"). Further, Stalking Horse Bidder does not intend to assume any leases or executory contracts.

B.     On the Closing Date, the Winning Bidder shall wire immediately available funds in an amount equal to the amount described in its winning bid which shall be no less than $1,350,000.00 in cash, or if there are no bids other than the bid of the Stalking Horse Bidder, the amount provided for in the Asset Purchase Agreement between Debtor and the Stalking Horse Bidder.

5.     **QUALIFIED BIDDERS.**

A.     All bidders must be Qualified Bidders (as defined below) to participate at the Auction (as defined below).

B.     The Stalking Horse Bidder is a "Qualified Bidder." Any entity that submits a Qualified Bid (as defined below) in accordance with these Bidding Procedures and provides evidence satisfactory to the Consultation Parties that it will be able to pay the Purchase Price in cash at closing is also a Qualified Bidder.

C.     A "Qualified Bid" is a written offer to purchase the Assets which is submitted by a Qualified Bidder.

6.     **DEADLINE TO SUBMIT QUALIFIED BIDS:** Any person or entity that wishes to submit a Qualified Bid must submit its bid so that it is actually received by Debtor's counsel no later than no later than 12:00 p.m. prevailing Eastern Time on February 22, 2021 ("Qualified Bid Deadline").

7.     **WHERE TO SUBMIT BIDS**: Bids must be submitted by electronic mail to the e-mail addresses below of Debtor's counsel, counsel to the Official Committee of Unsecured Creditors ("Committee"), the Office of the United States Trustee, counsel for Trion Solutions, Inc. and Trion Staffing Solutions, Inc., and counsel for Manufacturers Capital, a division of Commercial Credit Group, Inc., and must include an address, telephone number, and electronic mail address at which the entity submitting the bid ("Proposed Bidder") may be contacted.

A.     Debtor's counsel:
           Zachary R. Tucker
           9460 S. Saginaw Road, Suite A
           Grand Blanc, MI 48439
           ztucker@winegarden-law.com

B.     Committee counsel:
           Marc N. Swanson
           150 West Jefferson, Suite 2500
           Detroit, MI 48226
           swansonm@millercanfield.com


C.     Office of the United States Trustee:
           Jill M. Gies
           Office of the United States Trustee
           211 W. Fort St., Ste. 700
           Detroit, MI 48226
           Jill.gies@usdoj.gov

D.     Counsel for Trion Solutions, Inc. and Trion Staffing Solutions, Inc.:
           Shannon L. Deeby
           151 S. Old Woodward Avenue, Suite 200
           Birmingham, MI 48009
           sdeeby@clarkhill.com

E.     Counsel for Manufacturers Capital, a division of Commercial Credit Group, Inc.:
           David M. Black
           One Towne Squire, Suite 1700
           Southfield, Michigan 48076
           dblack@sommerspc.com

8.     **CONTENT OF QUALIFIED BIDS:** A Stalking Horse Bid is deemed to be a Qualified Bid submitted by a Qualified Bidder. All other Qualified Bids must include the following items (collectively, the "Bid Package"):

A.     An unconditional cash offer for the Assets that is not less than the sum of the $1,350,000.00, which amount includes the Expense Reimbursement Fee, plus agreement to pay all Cure Costs and Assumed Liabilities for pre-paid customer unperformed services.

B.     An executed confidentiality agreement in form and substance reasonably satisfactory to the Debtor.

C.     A signed asset purchase agreement that fully outlines the terms and conditions of the proposed purchase transaction.

D.     A designation of the executory contracts and unexpired leases that the Qualified Bidder desires to be assumed and assigned by the Debtor to the Qualified Bidder. A potential Qualified Bidder must make a good faith showing of adequate assurance of future performance with respect to any unexpired leases or executory contracts that are to be assumed and assigned to the Qualified Bidder. In addition to paying the cash purchase requirement any cure costs must be paid by the Qualified Bidder.

E.   A disclosure of the identity of each person or entity that will be bidding for the Assets and any connection with the Debtor. Additionally, a disclosure of the identity of the person that would be designated to bid at the Auction on behalf of the Proposed Bidder.

F.   A binding and irrevocable offer.

G.   Evidence of the financial ability of the Proposed Bidder to consummate the proposed transaction with the closing to occur no later than February 26, 2021, that is reasonably satisfactory to the Debtor, the Debtor's professionals, the Official Committee of Unsecured Creditors, Trion Solutions, Inc. and Trion Staffing Solutions, Inc., and Manufacturers Capital, a division of Commercial Credit Group, Inc. (collectively, the "Consultation Parties"), which may include audited (if in existence) or unaudited financial statements and/or other written evidence of the financial ability to close.

H.   A board/member resolution or written evidence that demonstrates to the reasonable satisfaction of the Debtor and the Committee that the Proposed Bidder has obtained all corporate or other authority necessary for it to close and fund the proposed transaction and that the person(s) authorized to bid at the Auction on behalf of such entity are authorized to do so.

I.   A deposit in cash or other immediately available funds ("Deposit") to be wired into a bank account to be designated by Debtor, which Deposit must be received on or before the Qualified Bid Deadline and in the amount of not less than $100,000.00. Previously made deposits do not qualify.

J.   The bid must not contain any contingencies and may not include any financial or due diligence contingencies.

K.   All bids must contemplate the purchase of Debtor's assets "AS IS AND WHERE IS." The signed purchase agreement must be consistent with this requirement and must not require Debtor to make any representations inconsistent with an "as is where is" transaction.

The Debtor and the Committee, in consultation with the Consultation Parties, reserve the right to work with any potential bidder in advance of the Auction to cure any deficiencies in a bid that is not initially deemed to be a Qualified Bid. The Debtor will provide to the Consultation Parties copies of each Bid Package received from a proposed Qualified Bidder, as described in these Bidding Procedures. The Debtor, after consulting with the Consultation Parties, will determine if a proposed Qualified Bidder is, in fact, a Qualified Bidder. Each of the Consultation Parties reserves all rights to object to the Debtor's designation of a Qualified Bidder (other than the Stalking Horse Bidder).

9.   **"AS IS, WHERE IS"; NO RELIANCE BY BIDDERS.** All entities seeking to be designated as Qualified Bidders shall be conclusively presumed to represent, warrant, and acknowledge as follows:

A.   The Assets shall be sold on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by Debtor, its agents, or the bankruptcy estates.

B.   All of Debtor's right, title, and interest in and to the Assets pursuant to the terms of the Sale Order shall be sold free and clear of all liens, claims, encumbrances, interests, restrictions, and other encumbrances of any kind or nature thereon to the full extent authorized under Bankruptcy Code §§ 363(f) and 365, with the

same to attach to the net proceeds of the sale of the Assets according to their priority.

C.     Each Qualified Bidder understands and is bound by the terms of these Bidding Procedures, and any order approving these Bidding Procedures.

D.     Each Qualified Bidder has had an opportunity to conduct reasonable due diligence, if requested, and it has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or Assets in making its bid and has not relied upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the Assets or the accuracy or completeness of any information provided in connection with the Assets, the Bidding Procedures Order, or the Auction, except as expressly stated in the Bidding Procedures Order or in an executed asset purchase agreement.

E.     Each Qualified Bidder has not colluded with any party with respect to its bid and has submitted its bid in good faith and not by any means forbidden by law. Nothing herein shall be construed to prohibit joint bids, however.

10.    **DESIGNATION OF QUALIFIED BIDS.**

A.     On or before February 22, 2021, at 12:00 p.m. Eastern Time, Debtor will, after consulting with the Consultation Parties, designate those submitted bids, if any, that are Qualified Bids.

B.     The Debtor may, after consulting with Consultation Parties, determine at the Auction that a previously Qualified Bidder has altered its bid in a way that causes it to no longer be a Qualified Bidder.

C.     If no Qualified Bids other than a Stalking Horse Bid are received by the Qualified Bid Deadline, Debtor will seek Bankruptcy Court approval of a sale of the Assets to the Stalking Horse Bidder.

11.    <u>AUCTION</u>.

A.     If one or more Qualified Bids is received (in addition to the Stalking Horse Bid) by the Qualified Bid Deadline, the Auction will be conducted at the offices of Winegarden, Haley, Lindholm, Tucker, and Himelhoch, PLC, or such other place as may be designated by the Debtor, on February 23, 2021, commencing at 12:00 p.m. prevailing Eastern Time ("<u>Auction</u>"). Qualified Bidders and the Consultation Parties may attend the Auction via remote video connection, provided that they contact the attorney for the Debtor by email to ztucker@winegarden-law.com to make arrangements. Qualified Bidders and the Consultation Parties appearing remotely will need to provide visual verification of their identities prior to being allowed to participate.

B.     Only representatives of Debtor, the Committee, the United States Trustee, Stalking Horse Bidder, any Qualified Bidder, and any entity holding a Lien will be entitled to attend the Auction.

C.     Debtor may announce at the Auction additional procedural, non-material rules for bidding and other procedures that are reasonable under the circumstances *(e.g.,* regarding the amount of time allotted to make subsequent overbids) for conducting the Auction, so long as such rules are not inconsistent with the provisions of the Bidding Procedures Order, any order of the Court entered in

connection herewith or the Bankruptcy Code.

D.    The conduct of the Auction may be transcribed, but transcription is not required.

E.    Following consultation with the Consultation Parties, Debtor shall designate, in its discretion, at the start of the Auction the Qualified Bid determined by the Debtor in the exercise of their business judgment to be the highest and best bid as the initial bid for the Assets ("Initial Qualified Bid").

F.    The first overbid above the Initial Qualified Bid and each subsequent overbid must be in the form of cash consideration and must be determined by Debtor to be equal in value to the sum of $80,000 ("Bidding Increment") above the immediately preceding Initial Qualified Bid or subsequent overbid (if applicable).

G.    Promptly after the conclusion of the Auction and after consultation with the Consultation Parties, Debtor will designate the highest or best Qualified Bid (taking into account all relevant factors, including, but not limited to, cash consideration, the terms and conditions of the proposed agreement, the aggregate value offered by the Qualified Bidder, the speed and certainty of consummation of a sale of the Assets to such Qualified Bidder), and the net proceeds that will be made available to the Debtor's bankruptcy estate upon a purported sale of the Assets ("Winning Bidder") and shall designate the next highest or otherwise best Qualified Bid ("Back-Up Bid") and the entity submitting the Back-Up Bid ("Back-Up Bidder").

H.    Debtor will file a notice immediately after the Auction setting forth the identity of the Winning Bidder.

I.    At the conclusion of the Auction, the party making the highest or otherwise best bid for the Assets shall be designated the Winning Bidder and the party submitting the second highest or otherwise best bid shall be designated the Back-Up Bidder.

J.    If the Winning Bid is approved by the Court and the Winning Bidder fails to close, Debtor shall be authorized to close on the Back-Up Bid without further order of the Court.

12.   **PRESENTATION OF WINNING BIDDER AND BACK-UP BID; ACCEPTANCE OF QUALIFIED BID ONLY UPON COURT APPROVAL**.

A.    A hearing shall occur on February 25, 2021, at which hearing Debtor shall seek entry of an order approving the sale of the Assets to the Winning Bidder ("Sale Order") and that is effective immediately upon entry, notwithstanding Bankruptcy Rule 6004(h).

B.    The Sale Order shall provide that, if the transaction with the Winning Bidder for sale of the Assets fails to close because of a breach or failure to perform on the part of the Winning Bidder, Debtor may consummate a sale of the Assets pursuant to the Back-Up Bid without further order of the Court.

C.    The Back-Up Bid of a Back-Up Bidder, including the Stalking Horse Bidder if the Stalking Horse Bid is the second highest and best bid, shall remain open and irrevocable until March 8, 2021 ("Outside Back-Up Date").

D.    A Qualified Bid, including any Winning Bid or Back-Up Bid, shall be deemed accepted by Debtor only when that Qualified Bid has been approved by the Court.

13.   **TREATMENT OF DEPOSITS.**

A.      Any Qualified Bidder that submitted a Deposit and that is not designated at the Auction as having submitted the Winning Bid or the Back-Up Bid shall have its Deposit returned no later than two (2) business days after the designation of the Winning Bid.

B.      If a Qualified Bidder is the Back-Up Bidder, its deposit shall be returned to it within two (2) business days after the Outside Back-Up Date, unless its Back-Up Bid becomes the Winning Bid.

C.      Notwithstanding anything to the contrary in any agreement between a Qualified Bidder and Debtor or any other entity, if such Qualified Bidder fails to consummate a transaction approved pursuant to the Sale Order because of a breach or failure to perform on the part of such Qualified Bidder, such Qualified Bidder shall not be entitled to the return of its Deposit. Such Deposit shall be deemed forfeited and property of Debtor's estates, such Deposit shall be retained by Debtor's estates in partial satisfaction of any damages due to Debtor's estates as a result of such Qualified Bidder's failure to consummate the transaction, and such Deposit shall be deemed to be proceeds of the Sale. Debtor retains any and all rights to recover damages in excess of the Deposit from such Qualified Bidder.

14.   **CLOSING.** The closing of the transactions contemplated by the Sale Motion ("Closing") shall take place remotely via electronic exchange of documents, on the date ("Closing Date") that is mutually agreed to by the Parties but in no event shall be no later than February 26, 2021, absent written agreement of the Debtor and the Consultation Parties.

15.   **SALE HEARING.** A hearing ("Sale Hearing") to consider entry of the Sale Order will be held on **February 25, 2021 at 11:00 a.m. (Eastern)** and shall be held by telephone before the Honorable Maria L. Oxholm, (in accordance with her published practices).

**EXHIBIT 3**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

IN RE:

LAPEER INDUSTRIES, INC               Case No. 20-48744
                                        Chapter 11 proceeding

             Debtor.                     Judge: Maria L. Oxholm
_____/

### NOTICE OF AUCTION AND SALE

**PLEASE TAKE NOTICE** that, on January 26, 2021, the Debtor filed its motion ("Sale Motion") for entry of orders pursuant to §§ 105(a), 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* ("Bankruptcy Code") and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"): (a) approving the Bidding Procedures (as defined below) in connection with the sale ("Sale") of substantially all of Debtor's assets used or useful in their businesses as more particularly described in the Asset Purchase Agreement ("Assets"); (b) authorizing and scheduling an auction if multiple bids are received ("Auction"), in connection with the Sale; (c) approving cure procedures relating to the assumption and assignment of certain executory contracts and unexpired leases ("Assumed and Assigned Agreements") in connection with the Sale; (d) approving the form and manner of notices; (e) setting a hearing ("Sale Hearing") to take place after the Auction (if an Auction is necessary), to approve the Sale and the assumption and assignment of the Assumed and Assigned Agreements.

By Order dated February __, 2021, the Bankruptcy Court entered an order ("Bidding Procedures Order") approving certain Bidding Procedures in connection with and furtherance of the Sale Motion (the "Bidding Procedures").

Copies of the Bidding Procedures Order and the Bidding Procedures are available free of charge and may be requested by contacting Debtor's counsel at (810) 579-3600 or ztucker@winegarden-law.com.

Any party that wishes to take part in the process and submit a bid for the Assets (or the Additional Assets) must comply with all of the Bidding Procedures.

In the event the Debtor receives a Qualified Bid, the Debtor will, unless otherwise ordered by the Court, conduct the Auction with respect to the Assets. The Auction will be conducted at the offices of Winegarden, Haley, Lindholm, Tucker, and Himelhoch, PLC or such other place as may be designated by the Debtor, on February 23, 2021, commencing at 12:00 pm prevailing Eastern Time ("Auction"). Qualified Bidders may attend the Auction via remote video connection, provided that they contact the attorney for the Debtor by email to ztucker@winegarden-law.com at least seven (7) days prior to the auction to make arrangements for a remote appearance. Qualified Bidders appearing remotely will need to provide visual verification of their identities prior to being allowed to participate.

If you seek to object to the sale of the Assets or any portion thereof, you must comply with the terms for making such objections as set forth in the Bidding Procedures Order and the Bidding Procedures.

Such objections must be filed with the Bankruptcy Court, and served on Debtor's counsel so as to be received, on or before **February 23, 2021.**

The Sale Hearing shall be held on February 25, 2021 at 11:00 a.m. (Eastern) and shall be held by

telephone before the Honorable Maria L. Oxholm, (in accordance with her published practices), at which time the Court will hear any such objections.

If any party fails to timely file and serve an objection in accordance with the Bidding Procedures Order, the Bankruptcy Court may disregard such objection. The failure of any person to timely file its objection shall be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Sale or the Debtor's assumption and assignment of the Assumed and Assigned agreements or the consummation of the Sale.

**EXHIBIT 4**

20-48744-mlo    Doc 423    Filed 02/17/21    Entered 02/17/21 22:52:36    Page 23 of 46

## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

IN RE:

LAPEER INDUSTRIES, INC             Case No. 20-48744
                                     Chapter 11 proceeding

            Debtor.                      Judge: Maria L. Oxholm
_____/

## NOTICE TO COUNTERPARTIES TO EXECUTORY
## <u>CONTRACTS AND UNEXPIRED LEASES</u>

**You are receiving this notice because you may be a party to a contract or lease with one or more of the Debtors. Please read this notice carefully as your rights may be affected by the transactions described herein.**

**PLEASE TAKE NOTICE** that, on August 5, 2020, Lapeer Industries, Inc (the "<u>Debtor</u>") commenced this case by filing a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").

**PLEASE TAKE FURTHER NOTICE** that, on January 26, 2021, Debtor filed its *Second Motion for Entry of an Order (I) Approving Bidding Procedures, (II) Scheduling an Auction and a Sale Hearing in Connection with the Sale of Substantially All of Debtor's Assets, (III) Establishing Dates and Deadlines in Connection with the Sale, and (IV) Granting Related Relief; and for Entry of an Order (A) Authorizing the Sale of Substantially All of Debtor's Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* ("<u>Sale Motion</u>").

**PLEASE TAKE FURTHER NOTICE** that, on February __, 2021, the United States Bankruptcy Court for the Eastern District of Michigan ("<u>Bankruptcy Court</u>") entered an *Order (I) Establishing Bidding Procedures, (II) Scheduling An Auction And A Sale Hearing In Connection With The Sale Of Substantially All Of Debtor's Assets, (III) Setting Certain Dates And Deadlines In Connection Therewith, and (IV) Granting Related Relief* ("<u>Bidding Procedures Order</u>") [Docket No. ____].

Among other things, the Bidding Procedures Order: (a) established certain procedures ("<u>Bidding Procedures</u>") for the sale ("<u>Sale</u>") of the Debtor's assets pursuant to an auction ("<u>Auction</u>") and (b) scheduled the time and place for the Auction. The hearing on whether to approve the Sale will take place on **February 25, 2021 at 11:00 a.m. (Eastern)** and shall be held by telephone before the Honorable Maria L. Oxholm, (in accordance with her published practices) ("<u>Sale Hearing</u>").

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bidding Procedures Order, the Debtor may potentially assume and assign to the Winning Bidder one or more of those executory contracts and unexpired leases listed on <u>Schedule 1</u> attached hereto (collectively, the "<u>Assumed and Assigned Agreements</u>" and each, an "<u>Assigned Agreement</u>), pursuant to § 365 of the Bankruptcy Code.

**PLEASE TAKE FURTHER NOTICE** that, Debtor has indicated on Schedule 1 attached hereto the cure amounts that Debtor believes must be paid to cure all pre-petition defaults and pay all amounts accrued under the Assigned Agreements (in each instance, the "<u>Cure Amount</u>").

**PLEASE TAKE FURTHER NOTICE** that, any party seeking to object to the assumption by the Debtor and assignment/transfer to the Winning Bidder of any Assigned Agreement, including the validity and amount of the Cure Amount as determined by the Debtors, or otherwise assert that any other

amounts, defaults, conditions or pecuniary losses must be cured or satisfied under any of the Assigned Agreement for such contract or lease to be assumed and assigned, must file an objection ("Cure/Assignment Objection") that (a) is in writing (b) sets forth the specific monetary amount the objector asserts to be due, and the specific types of the alleged defaults, pecuniary losses, accrued amounts and conditions to assignment and the support therefor, (c) is filed with the Clerk of the Bankruptcy Court, and served on the Debtor's counsel so that it is received, on or before **February 24, 2021 at 5:00 p.m. prevailing Eastern Time** ("Cure/Assignment Objection Deadline"). Any such unresolved objections will be heard at the Sale Hearing.

      **PLEASE TAKE FURTHER NOTICE** that all Qualified Bidders shall provide evidence demonstrating their ability to provide adequate assurance of future performance under any Assumed and Assigned Agreement to all parties listed on Schedule 1 by no later than **February 24, 2021 at 5:00 p.m. (Eastern).**

      **PLEASE TAKE FURTHER NOTICE** that, any party seeking to object to the ability of a Qualified Bidder to provide adequate assurance of future performance of an Assigned Agreement must file an objection ("Adequate Assurance Objection") with the Clerk of Bankruptcy Court on or before **February 24, 2021 at 5:00 p.m. prevailing Eastern Time** ("Adequate Assurance Objection Deadline" and collectively with the Cure/Assignment Objection Deadline, the "Cure/Adequate Assurance Objection Deadlines"). Any such unresolved objections will be heard at the Sale Hearing.

      **PLEASE TAKE FURTHER NOTICE** that, unless a Cure/Assignment Objection or Adequate Assurance Objection is filed and served before the Cure/Adequate Assurance Objections Deadlines, all parties shall (a) be forever barred from objecting to the Cure Amount or provision of adequate assurance of future performance and from asserting any additional cure or other amounts with respect to the Assigned Agreements, and the Debtor and the Winning Bidder shall be entitled to rely solely upon the Cure Amount; (b) be deemed to have consented to the assumption and assignment; (c) be forever barred and estopped from asserting or claiming defaults exist, that conditions to assignment must be satisfied under such Assigned Agreements or that there is any objection or defense to the assumption and assignment of such Assigned Agreements.

      **PLEASE TAKE FURTHER NOTICE** that, if you agree with the Cure Amount indicated on Schedule 1 and otherwise do not object to the Debtor's assumption and assignment of your lease or contract, you need not take any further action.

      **PLEASE TAKE FURTHER NOTICE** that, Debtor's decision to assume and assign the Assigned Agreements is subject to the approval of the Bankruptcy Court.

      **PLEASE TAKE FURTHER NOTICE** that, the inclusion of any document on the list of Assigned Agreements shall not constitute or be deemed to be a determination or admission by the Debtor or the Winning Bidder that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code, or that your executory contract or unexpired lease will be assumed and/or assigned, and all rights with respect thereto are expressly preserved.

Respectfully Submitted,

WINEGARDEN, HALEY, LINDHOLM,
TUCKER & HIMELHOCH, P.L.C.
Attorneys for the Debtor

Dated: February 17, 2021        By:   /s/ Zachary R. Tucker
                                          **Zachary R. Tucker** (P-75263)
                                          9460 S. Saginaw Rd., Suite A
                                          Grand Blanc, MI 48439
                                          (810) 579-3600
                                          ztucker@winegarden-law.com

**EXHIBIT 5**

# ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (the "Agreement") dated as of February 18, 2021, is by and between Lapeer Industries, Inc. ("Debtor") and Schreiber Holdings, LLC ("Holdings" and together with Debtor, the "Seller") and Business Company, LLC (the "Purchaser").

## RECITALS

1.      Debtor is the debtor in possession (the "Debtor") in a chapter 11 proceeding under the United States Bankruptcy Code, 11 USC §§ 101 et seq. (the "Bankruptcy Code"), pending as case no. 20-48744-mlo (the "Bankruptcy Case") in the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division at Detroit (the "Bankruptcy Court") commenced on August 5, 2020 (the "Petition Date").

2.      Upon the terms and subject to the conditions set forth herein and as authorized under section 363 of the Bankruptcy Code, Purchaser desires to purchase from the Seller and Seller has agreed to sell to the Purchaser, all of the Debtor's right, title and interest in the Assets as that term is defined below, for $1,250,000.00 (the "Purchase Price") to be paid to Debtor (and not Holdings), payable as provided herein.  Holdings will not receive any of the Purchase Price.

3.      The closing of the contemplated Purchase, and Purchaser's and Seller's obligations under this Agreement, are contingent on the Bankruptcy Court's approval of the sale, and the parties acknowledge that no sale shall occur until the Bankruptcy Court enters its order approving such sale.

NOW, THEREFORE, in consideration of the above recitals and the mutual representations, covenants, warranties and agreements set forth in this Agreement, Purchaser and Seller hereby agree:

## ARTICLE I

## PURCHASE AND SALE OF ASSETS

1.1    **Agreement to Sell and Purchase Transferred Assets.** Subject to the terms and conditions of this Agreement, Seller agrees to sell, assign, convey and transfer to Purchaser and Purchaser agrees to purchase from Seller, all of the Seller's right title and interest in the Assets described below, free and clear of all liens, claims, encumbrances and other interests pursuant to Section 363 of the Bankruptcy Code.

## THE ASSETS

1.2    **Assets to Be Purchased.** The assets to be purchased consist of substantially all of Debtor's assets used in its businesses as more particularly described herein ("Assets"), including, but not limited to, Debtor's right to, title to and interest in the following:

> a.    All tangible personal property, leasehold improvements, installations, fixtures, trade fixtures, machinery, tooling and equipment including all items identified on **Exhibit A** (except item #163 of Exhibit A which is modified below), fittings, furniture, furnishings, inventory, materials including steel, aluminum, stainless, scrap, WIP, cars, trucks, trailers or rolling stock, office equipment and supplies wall to wall and floor to ceiling (collectively, "Tangible Property") located and used at each of Debtor's locations at 3140 John Conley Dr, Lapeer, MI 48446 and 400 McCormick Drive, Lapeer MI 48446. Exhibit A #163 shall be redefined as follows: all trailers, containers, and vessels (including contents) located at the above referenced locations excluding customer owned assets;

b.      All right, title and interest of the Debtor and its bankruptcy estate in the real property lease (the "Real Property Lease") related to Debtor's location commonly known as 3140 John Conley Drive, Lapeer, MI 48446;

c.      All computers, computer equipment, computer hardware/software, servers, fiber optic lines, copiers, security systems, machines, keys, codes and all other equipment owned by Debtor;

d.      All telephone numbers registered to the Debtor; e-mail addresses, domain names, fax numbers, websites, provided, however, that the Buyer acknowledges that the Debtor will utilize the telephone numbers in the ordinary course of business prior to the closing date;

e.      All of Seller's intellectual property and all rights to any intellectual property of any other person licensed to the Debtor pursuant to any contract including names, domain names, trademarks, registrations, websites, assumed names, logos masks, copyrights, and patents;

f.      All contracts and all rights of the Debtor to accounts receivable, in an amount of no less than $51,000, related to or arising from debts or obligations owed by the Israeli Ministry of Defense (IMOD);

g.      All express or implied guarantees, warranties, representations, covenants, indemnifications, rights, claims, counterclaims, defenses, credits, causes of action or rights of set off against third parties relating to the Assets (including for the avoidance of doubt, those arising under, or otherwise relating to, the contracts to be purchased but expressly excluding all Avoidance Actions and Causes of Action (as defined in the "Bidding

Procedures" document and this Agreement)) or liabilities, including

without limitation, rights under vendors' and manufacturers' warranties,

indemnities, and guarantees except those which are expressly identified in

the Excluded Assets section below;

h.    To the extent transferrable under applicable law or with the consent of any

third party, if necessary, which consent has been obtained, all licenses,

permits, certifications and approvals from all permitting, licensing,

accrediting and certifying agencies, all pending applications for any of the

foregoing, and the rights to all data and records held by such permitting,

licensing and certifying agencies;

i.    All documents consisting of purchasing and sales records, accounting

records, business plans, budgets, costs and pricing information, customer

and vendor lists, client records wherever located related to the business,

other than those documents that are Excluded Assets as identified in the

"Bidding Procedure" Document;

j.    Debtor's current employees are leased from a third party; however,

retention of employees is possible.  Accordingly, all personnel files for

employees the purchaser intends to retain will also be included, except as

required under law; provided, however, that the Debtor has the right to

retain copies at its expense to the extent required by law;

k.    All prepaid expenses relating to the Assets;

l.    Any rights, claims or causes of action of the Debtor, except for those

identified as related to, or arising under, the Excluded Assets section of the

"Bidding Procedures" Document and this Agreement, including without limitation, the Avoidance Actions and Causes of Action;

m. All customer contracts for services for which performance is due or to become due by the Debtor at any location of the Debtor's that is operating as of the date of closing;

n. Any claim, right or interest of Debtor in or to any refund or rebate relating to the Assets;

o. All insurance claims or proceeds arising out of or related to the damage, destruction or loss of any Assets to the extent any damage, destruction or loss remains unrepaired or not replaced at the Closing;

p. All tax refunds; and

q. Insurance policies with Debtor as named insured and all insurance proceeds and insurance claims of Debtor or to which Debtor is entitled, including Debtor's directors' and officers' liability insurance policy.

1.3 **Excluded Assets.** The Purchase does not include any of the following (collectively, the "Excluded Assets") as listed in the "Bidding Procedures" Document.

a. Any and all rights under all contracts that are not assumed by the Purchaser;

b. Any avoidance actions, including without limitation, voidable transaction actions, fraudulent transfer actions and preference actions, and claims and proceeds of such avoidance actions and all claims and causes of action under Chapter 5 of the Bankruptcy Code and non-Bankruptcy law and the proceeds of such actions (collectively, the "Avoidance Actions");

c.       Claims against officers, directors, managers, members, of the Debtor and any claims against any insider (as defined in the Bankruptcy Code) of the Debtor and any claims against Marvin Engineering Co., Inc. and any of its affiliates, owners, trusts, subsidiaries or related entities or related individuals, including without limitation, the Marvin Group and the Gerald M. Friedman Trust dated 4/24/08.

d.       Any (i) confidential personnel and medical records pertaining to any employee who is not hired by the buyer; (ii) books and records that Debtor is required by law to retain, provided that the buyer shall have the right to make copies of any portions of such retained books and records that relate to the business or any of the Assets; and (iii) minute books, stock and membership ledgers and stock and membership certificates of the Debtor;

e.       All rights under or pursuant to all warranties (express or implied), representations and guarantees made by third parties relating to any Excluded Assets;

f.       All claims that Debtor may have against any person or entity solely with respect to any Excluded Assets or which solely constitute a defense against any of the Excluded Liabilities;

g.       All Employees Plans / Agreements and assets related thereto, including the Debtor's rights, title and interests in any (i) assets related to a defined benefit or contribution retirement plan, and (ii) assets related to non-qualified deferred compensation plan;

h.       All accounts receivable other than accounts receivable from IMOD. The

accounts receivable from IMOD are no less than $51,000;

i.      All membership interests of the Debtor and all equity securities owned or held by any members of Debtor;

j.      Debtor's cash and cash equivalents, which includes but is not limited to amounts related to Debtor's customer TAG which may be held in escrow and the $100,000 deposit held by the Debtor's counsel from Daniel Schreiber;

k.      For the avoidance of doubt, all real property and personal property which was previously used or being used by the Debtor but not owned by the Debtor is expressly designated as an "Excluded Asset"; and

l.      For the avoidance of doubt, any interest, including but not limited to any leasehold interest which relates to any real property other than 3140 John Conley Drive, Lapeer, MI 48446 is an "Excluded Asset", as Debtor asserts it has no interest in any real estate other than the lease with respect to 3140 John Conley Drive, Lapeer, MI 48446.

     1.4     **Excluded Liabilities.** Except as expressly provided herein, Purchaser is not assuming any liability or obligation of the Debtor and/or Seller of whatever nature. All such liabilities and obligations, including but not limited to administrative claims arising from the Bankruptcy Case shall be retained by and remain liabilities and obligations of the Debtor's Estate and/or the Seller.

     1.5     **Sale Free and Clear of All Liens, Claims, Encumbrances and Other Interests.** The Assets shall be transferred to the Purchaser, free and clear of all liens, claims, encumbrances, and other interests of record with all such liens, claims, encumbrances and other

interests of record attaching to the proceeds of the sale.

1.6  **Method of Conveyance.** Upon Closing, title to the Assets shall pass to Purchaser and Seller shall deliver to Purchaser any assignments, bills of sale or similar documents sufficient to convey to Purchaser title to all the Assets, as well as such other instruments of conveyance as Purchaser may reasonably deem necessary (both at and after the Closing) to effect or evidence the transfers contemplated herein.

ARTICLE II

2.1  Stalking Horse Designation and Protections. Seller hereby designates Purchaser as the stalking horse purchaser (the "Stalking Horse") with respect to the Assets. Seller hereby grants Purchaser the following Stalking Horse protections: Seller shall pay to Purchaser cash in an amount equal to $50,000.00 (Fifty-Thousand Dollars) plus the amount of actual fees and expenses not to exceed $30,000.00 (Thirty-Thousand Dollars) (collectively, the "Expense Reimbursement Fee") only in the event that Seller, in consultation with the Creditors' Committee, consummates a sale or transfer of all or any material portion of the Assets to one or more third parties whose bid(s) was or were selected by the Seller as higher and better through the sale process and approved by the Court.  The auction procedures order shall provide for overbid protection of $80,000.00 (Eighty Thousand Dollars) which shall commence the auction at $1,350,000.00 (One Million Three Hundred Thirty Thousand Dollars).

2.2  In the event the Expense Reimbursement Fee is payable pursuant to the preceding section, (1) the Expense Reimbursement Fee shall be paid out of the cash sale proceeds received from a sale of Assets to such third party, and (2) no lien of any third party shall attach to the portion of the sale proceeds representing the Expense Reimbursement Fee. If the Expense Reimbursement Fee becomes due and payable, it shall be paid to Buyer at the Closing of the

higher and better transaction(s), and shall be treated as an allowed administrative expense if Seller is placed into a Chapter 7 liquidation. The obligation to pay the Expense Reimbursement Fee shall be senior to all liens, security interests and claims in the Assets. The provisions of this section shall survive any termination of this Agreement. If the Expense Reimbursement Fee becomes due and payable, the Expense Reimbursement Fee shall constitute Purchaser's liquidated damages and shall be Purchaser's sole and exclusive remedy.

2.3     **Purchase Price – Payment.** The Purchase Price shall be paid as follows:

2.3.1     A deposit in the amount of $100,000.00 shall be tendered to and held by Winegarden, Haley, Lindholm, Tucker & Himelhoch, PLC.

2.3.2     The sum of $1,150,000.00 will be paid by Purchaser at Closing to the Debtor. No money will be paid to Holdings. All cure costs must be paid by Purchaser, however, Business Company, LLC has no intention of assuming any leases or executory contracts that require cure costs to be paid. Seller has no responsibility for payment of any cure costs.

2.4     **Retention of Refund or Deposit.**

2.4.1     If this Agreement is terminated by the Seller as a result of the willful failure by Purchaser to close the transactions contemplated by this Agreement or to otherwise perform any of its obligations under this Agreement, the Seller shall be entitled to retain the Deposit.

2.4.2     If this Agreement is terminated by Purchaser under section 9.1 (B) or any other party for any other reason or if for any reason the Closing does not occur on or before the Closing Deadline, not later than two (2) business days following such termination date or Closing Deadline, as applicable, Seller shall refund to Purchaser the Deposit by wire transfer of immediately available funds to an account or accounts specified by Purchaser.

## ARTICLE III
## CLOSING

3.1 **Closing.** The sale shall be effected by a closing of the sale and purchase of the assets (the "Closing") within 2 business days of the Bankruptcy Court's Order approving the sale becoming a final order under the Bankruptcy Code.

3.2 **Seller's Deliveries.** At Closing, Seller will deliver to Purchaser possession of the Assets and all other agreement or documents required to be delivered to Purchaser pursuant to the terms of this Agreement.

## ARTICLE IV
## REPRESENTATIONS AND WARRANTIES OF SELLER

4.1 **Enforceability.** Subject to the entry of the Sale Order, this Agreement constitutes Seller's valid and legally binding obligation, enforceable in accordance with its terms.

4.2 **Title and Authority to Sell.** Debtor warrants and agrees that it serves as debtor in possession in the Bankruptcy Case and that it has full authority of the Bankruptcy Court to sell the assets of the Debtor in accordance with the terms of this Agreement, and subject to Bankruptcy Court approval, free and clear of all liens, claims, encumbrances to the fullest extent permitted by Section 363 of the Bankruptcy Code, "as is, and where is" without representation or warranty other than any set forth in this Agreement.

## ARTICLE V
## REPRESENTATIONS AND WARRANTIES OF PURCHASER

Purchaser hereby represents and warrants to Seller that all the following statements are true, accurate and correct as of the date of execution of this Agreement and shall be true and correct as of the Closing Date:

5.1 **Organization.** Purchaser will be a duly organized limited liability company, validly existing, and in good standing under the laws of the State of Michigan and will have the

requisite power and authority to enter into this Agreement and any other documents that Purchaser is required to execute and deliver hereunder to perform its obligations under this Agreement. Its registration with the State of Michigan Department of Licensing and Regulatory Affairs is pending as of the date of this Agreement.

5.2 **Authorization.** The execution, delivery and performance of this Agreement and all other documents related thereto, either executed or to be executed pursuant to the Agreement by Purchaser, and the consummation of the transactions herein, have been duly authorized by all necessary actions on the part of the Purchaser.

5.3 **Enforceability.** This Agreement constitutes the valid and legally binding obligation of the Purchaser, enforceable in accordance with its terms, except as such enforceability may be limited by equitable principles and applicable bankruptcy or similar laws relating to or affecting the rights of creditors.

ARTICLE VI
COVENANTS OF SELLER

Seller covenants as follows:

6.1 **Conduct Outside the Ordinary Course of Business.** Without written consent of the Purchaser, from the date of this Agreement through the Closing, Seller will not with respect to the Assets:

    1. Sell, lease, transfer or encumber or assign any of the Assets.

    2. Engage in any practice, take any action, or enter into any transaction with respect to the Assets.

6.2 **Preservation of "going concern" value.** Seller will continue operations as they existed on January 11, 2021 so as to preserve the "going concern" value, if any, of the Assets.

6.3 **Obtaining Sale Order of the Bankruptcy Court.** Subject to sections 2.1 and

2.2, Seller shall take all steps reasonably necessary or appropriate to obtain the entry by the

Bankruptcy Court of the Sale Order in a form acceptable to Purchaser in its reasonable discretion

and as described below. Purchaser acknowledges and agrees that the Seller intends to conduct an

auction sale of the Assets, subject to higher and better bids for same and thus this Agreement is

contingent upon the Purchaser submitting the highest and best bid for the Assets.

ARTICLE VII
COVENANTS OF BOTH PARTIES

7.1 **Costs and Expenses.** Except for the protections contained in sections 2.1 and 2.2,

Purchaser and Seller shall each bear their own costs and expenses in connection with the

negotiation, purchase and approval of the purchase of the Assets and any transaction related

thereto.

ARTICLE VIII
CONDITIONS TO CLOSING

8.1 **Conditions to Purchaser's Obligations.** Purchaser's obligations to purchase the

Assets under this Agreement is subject to the satisfaction of each of the following conditions

precedent:

A. **Compliance with Covenants**. Seller shall have complied with the

covenants contained in this Agreement, and shall otherwise not be in default under this

Agreement.

B. **Asset and Customer Verification**. Purchaser shall have until 5:00PM on

February 16, 2021 to conduct due diligence on the Assets and customers of the Seller. Purchaser

may terminate this Agreement in its sole discretion prior to 5:00PM on February 16, 2021.

C. **Instruments of Transfer.** Purchaser or its nominee, shall have received

deeds, bills of sale and such other duly executed instruments of transfer, conveyance, and

assignments to Purchaser of the Assets as contemplated by this Agreement.

D.  **Bankruptcy Court's Approval of Sale.** Seller shall have obtained a final order from the Bankruptcy Court in a form and content satisfactory to Purchaser in its reasonable discretion approving the transactions contemplated herein (the "Sale Order"). Among other things, the Sale Order shall (a) approve the sale of the Assets to Purchaser on the terms and conditions set forth in this Agreement and authorize the Seller to proceed with this transaction, (b) include a specific finding that Purchaser is a good faith purchaser of the Assets, (c) state that the sale of the Assets to Purchaser shall be free and clear of all liens, claims, interests, security interest, encumbrances of any nature whatsoever to the fullest extent permitted by Section 363 of the Bankruptcy Code, (d) provide waiver of stays contemplated by Rule 6004(g) and (e) include specific findings that the Debtor has title to the Assets and that (f) Debtor has full and complete authority of the Bankruptcy Court to sell the Assets.

8.2  **Conditions to Seller's Obligations.** Seller's obligation to sell the Assets and otherwise consummate the transactions contemplated under this Agreement at Closing is subject to the satisfaction of each of the following conditions precedent, except as Seller may expressly waive the same in writing and in its sole discretion:

A.  **Accuracy of Representations and Warranties on Closing Date.** The representations and warranties made herein by the Purchaser in this Agreement shall be true and correct in all material respects, and not misleading in any material respect, on and as of the date given, and on and as of the Closing Date with the same force and effect as though such representations and warranties were made on and as of the Closing Date.

B.  **Deliveries.** Purchaser shall have delivered to Seller at Closing any executed documents required under this Agreement and the Purchase Price.

C. **Bankruptcy Court Approval.** The Bankruptcy Court shall have entered the Sale Order and the implementation, operation, or effect of the Sale Order shall have not been stayed and the Sale Order having become a final order.

## ARTICLE IX
## TERMINATION

9.1 **Right to Terminate Agreement.** This Agreement may be terminated and the transactions contemplated herein may be abandoned at any time before closing:

A. By mutual written agreement of the Purchaser and Seller;

B. By Purchaser, under section 8.1 (B), or if any material condition to closing has not been satisfied or if Seller fails to comply or perform a material covenant of this Agreement and Seller is unable, in a reasonable time, to satisfy such condition or covenant;

9.2 **Effect of Termination.** Upon the termination of this Agreement in accordance with this Section, all rights and obligations of Purchaser and Seller will terminate without any liability of one party to the other party with the exception of Seller's obligation to return the deposit as provided in section 2.4.2.

## ARTICLE X
## MISCELLANEOUS

10.1 **Notices.** All notices, requests, demands, waivers and other communication required or permitted to be given under this Agreement shall be in writing and will deemed to be duly given if: (a) delivered personally; (b) mailed by first class or certified mail, return receipt requested, postage prepaid; (c) sent by a national next day or overnight mail or courier service; (d) sent by confirmed facsimile transmission; or (e) sent by confirmed electronic mail. All such notices, requests, demands, waivers and other communication will be deemed to have been received: (i) if by personal delivery, upon delivery; (ii) if by certified or registered mail, on the

third business day after mailing thereof; (iii) if by next day or overnight courier, on the business day after such mailing; or (iv) if by confirmed facsimile or email, upon receipt.

| | |
|---|---|
| To the Purchaser: | Business Company, LLC |

| | |
|---|---|
| With a copy to: | Keller & Almassian, PLC<br>c/o Todd Almassian<br>230 Fulton Street E.<br>Grand Rapids, MI 49503 |

| | |
|---|---|
| To the Seller: | Lapeer Industries, Inc.<br>Attention: Mr. Daniel Schreiber<br>3140 John Conley Drive<br>Lapeer, MI 48446. |

| | |
|---|---|
| With a copy to: | Zachary Tucker, Esq.<br>Winegarden, Haley, Lindholm, Tucker & Himelhoch, PLC<br>9460 Saginaw Road, Suite A<br>Grand Blanc, MI 48439 |

10.2    **Consent to Jurisdiction.**

A.    THE BANKRUPTCY COURT WILL HAVE JURISDICTION OVER ALL MATTERS, INCLUDING ANY LEGAL ACTION, SUIT OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, ANY RELATED AGREEMENT OR THE TRANACTIONS CONTEMPLATED HEREBY OR THEREBY AND THE INTERPRETATION, IMPLEMENATION OR ENFORCEMENT OF THIS AGREEMENT, ANY RELATED AGREEMENT, OR THE INTERPRETATION, IMPLEMENATION OR ENFORCEMENT OF ANY RELATED AGREEMENT AND THE PARTIES HERTO IRREVOCABLY SUBMIT AND CONSENT TO SUCH JURISDICITON.

B.    Purchaser and Seller consent to venue of any action, suit or proceeding arising out of this Agreement in the Bankruptcy Court. If a court finds that subject matter jurisdiction is not available in the Bankruptcy Court, Purchaser and Seller hereby agree to submit

any and all disputes arising out of this Agreement to the jurisdiction and venue of the United States District Court for the Eastern District of Michigan, Southern Division.

IN WITNESS WHEREOF, the parties hereto have executed this Asset Purchase Agreement as of the day and year first written above.

**PURCHASER:**

**BUSINESS COMPANY, LLC**

By:      David Nemes

Its:

**SELLER:**

**LAPEER INDUSTRIES, INC.**

_____

By:     Daniel Schreiber

Its:    President

And

SCHREIBER HOLDINGS, LLC

_____

By:     Daniel Schreiber

Its:    Member

**EXHIBIT 6**

**<u>Settlement Term Sheet to Be Attached to Bidding Procedures Order Stipulation</u>**

- Deal is subject to bankruptcy court approval and definitive settlement documents that are acceptable to all parties. The papers filed with, and the presentation to, the bankruptcy court must detail the assets remaining in the estate after the sale and the administrative expenses remaining after the sale.  If Court approval of any aspect of the settlement is denied, the settlement will not proceed.  The right to object to the Sale, for any reason, is preserved.  Approval of the settlement agreement shall be contingent upon approval of the sale.

- $1,250,000 purchase price is broken down as follows:
    - $725,000 to Manufacturers Capital
    - $425,000 to Trion
    - $100,000 as a surcharge and carveout to professionals - $25K for each professional (Capstone, Winegarden, Miller and Oxford) – to be held in escrow pending approval of fee applications.
- Schreiber agrees to forfeit his deposit - $90,000 to be paid to Trion at the closing of the Sale for a total payment of $515,000.00 with the $10,000 balance remaining in the Estate
- Waiver of all rights to credit bid, consistent with the terms of the prior Bidding Procedures Order.
- If the purchase price increases Trion receives 75% of the increase and the Estate receives 25%
- Trion and Manufacturers Capital release and waive all claims against the Debtor, excluding any resulting general unsecured non-priority deficiency claims  after each receives proceeds from the sale (and, with respect to Trion, $90,000 from the deposit) in accordance with the above.  The Debtor, the Committee (but not its individual members), Trion, and Manufacturers Capital will execute mutual releases related to the sale and the bankruptcy case.  The Debtor and the Committee (but not its individual members) will release Daniel Schreiber and Daniel Schreiber will release the Debtor and Committee (but not its individual members) related to the sale and bankruptcy case.  Manufacturers Capital will <u>not</u> release Daniel Schreiber. For the sake of clarity, (a) individual members on the Committee (and creditors in the bankruptcy case generally) are not releasing anyone or any entity or the bankruptcy estate nor are they giving or receiving a release from anyone or any entity or the bankruptcy estate in their individual capacities or in respect of their individual claims, (b) the Committee's  (but not its individual members) release of the Debtor and Daniel Schreiber above does not (i) include any other person or entity other than the Debtor and Daniel Schreiber or (ii) release or waive claims for professional fees or expenses
- All assets not part of the sale remain in estate and include, without limitation, the following:
    - $10,000 Schreiber deposit
    - $51K in receivables (BAE - $45K and Raytheon - $6K)
    - $91K in cash
    - Chapter 5s (unknown value)
- Administrative expenses (approximate numbers)
    - $40K to UST (to be paid from cash on hand upon closing of sale)
    - $400K+ in postpetition admins (to hopefully be satisfied in whole or in part from remaining assets and chapter 5 recoveries or offsets)
    - $600K+ in professional fee claims (to hopefully be satisfied in whole or in part from remaining assets and chapter 5 recoveries or offsets)
    - $345K+ postpetition loan from Schreiber to debtor is waived and released by Schreiber in exchange for a release from the Debtor (above).
- Debtor and Committee agree that Debtor's counsel would pursue preference claims as fiduciary to the estate
- Statement on the record by the Stalking Horse Purchaser that there is no connection whatsoever between the Stalking Horse Purchaser or any of its principals and Mr. Schreiber or any of Mr. Schreiber's businesses.