# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN

In re:                          )
                                )  Case No. 20-48744
Lapeer Industries, Inc.,        )  Chapter 11
                                )  Hon. Maria L. Oxholm
            Debtor.             )
                                )
_____ /

**ORDER (I) AUTHORIZING DEBTOR TO ENTER INTO AGREEMENT FOR SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS WITH SUCCESSFUL BIDDER; (II) APPROVING THE ASSET PURCHASE AGREEMENT BETWEEN DEBTOR AND BUSINESS COMPANY, LLC.; (III) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES AND TRANSFERRING LIENS TO PROCEEDS THEREOF; (IV) AUTHORIZING AND APPROVING THE ASSUMPTION AND ASSIGNMENT OF THE DEBTOR'S EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (V) GRANTING RELATED RELIEF**

This matter has come before the Court upon the Debtor's Second Motion for Entry of an Order (I) Approving Bidding Procedures, (II) Scheduling an Auction and a Sale Hearing in Connection with the Sale of Substantially All of Debtor's Assets, (III) Establishing Dates and Deadlines in Connection with the Sale, (IV) Approving the Form of the Asset Purchase Agreement, and (V) Granting Related Relief; and for Entry of an Order (A) Authorizing the Sale of Substantially All of Debtor's Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, and (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Granting Related Relief; and for Entry of an Order Establishing an Administrative Claims Bar Date ("Sale Motion") [Docket No. 353]; and the Court having entered an Order (I) Establishing Bidding Procedures, (II) Scheduling an Auction and a Sale Hearing in Connection with the Sale of Substantially All of Debtor's Assets, (III) Setting Certain Dates and Deadlines in Connection Therewith, (IV) Approving the Form of the Asset Purchase Agreement, Including the Termination Fee, and (V) Granting Related Relief, [Docket No. 426], ("Bidding Procedures Order") approving procedures ("Bidding Procedures") for the sale or disposition of the Debtor's assets, approving Business Company, LLC (the

"Buyer") as stalking horse purchaser pursuant to the asset purchase agreement by and between the Buyer and the Debtor (the "APA"); and with the Debtor having thereafter conducted the process to sell its assets pursuant to the Bidding Procedures; with no other qualified bids having been received by the Debtor; and with the Buyer thus having submitted the highest and best offer for all assets defined as "Acquired Assets" identified in the APA, and the Court having reviewed and considered the Sale Motion, the associated pleadings, and all attachments (collectively, the "Sale Transaction"); and with it appearing that due notice of the Sale Motion and the APA has been provided; and with all objections to the Sale Motion having been withdrawn, resolved or overruled as provided in this Order ("Sale Order"); and with it appearing that the relief requested in the Sale Motion and granted herein is in the best interest of the Debtor, its estate, creditors, and all parties in interest in this chapter 11 case; and after due deliberation thereon; and good cause appearing therefor, it is hereby **FOUND AND DETERMINED THAT:**

**A. Jurisdiction and Venue**. This Court has jurisdiction to decide the relief requested in the Sale Motion and over the Sale Transaction and the property of the Debtor's estate pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this chapter 11 case and the Sale Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

**B. Statutory and Rule Predicates.** The statutory and other legal predicates for the relief sought in the Sale Motion are sections 105(a), 363 and 365 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, and 6006.

**C. Notice and Opportunity to Object**. Actual written notice of, and a fair and reasonable opportunity to object to and to be heard with respect to the Sale Motion, the Sale Transaction, the sale of the Acquired Assets free and clear of any Claims (as defined below), the assumption and assignment of the Debtor's contracts, and the relief requested in the Sale Motion has been given, as required by the Bankruptcy Code and the Bankruptcy Rules, to all persons entitled to notice.

**D. Final Order**. This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).

**E. Sound Business Purpose**. The Debtor has demonstrated good, sufficient, and sound business purpose and justification for approval of the APA and the Sale Transaction and in entering into the APA and all related bills of sale, assumption and assignment agreements and any and all other documents required to transfer the Debtor's Assets (collectively, the "Related Agreements") to the Buyer. The Debtor's

entry into and performance under the APA and Related Agreements (i) is a result of due deliberation by the Debtor and constitutes a sound and reasonable exercise of the Debtor's business judgment (ii) provides value to and is beneficial to the Debtor's estates, and is in the best interests of the Debtor and (iii) is reasonable and appropriate under the circumstances.

**F. Compliance with Bidding Procedures**. The Debtor and the Buyer complied with the Bidding Procedures in all respects. The Buyer was the successful bidder for the Acquired Assets in accordance with the Bidding Procedures.

**G. Highest and Best Value**. (i) The Debtor and its advisors Amherst Consulting, LLC ("Amherst"), engaged in a robust and extensive marketing and sale process for the Acquired Assets (ii) the Debtor and Amherst conducted a fair and open sale process, (iii) the sale process was non-collusive, duly noticed and provided a full, fair and reasonable opportunity for any entity to make an offer to purchase the Acquired Assets, and (iv) the process conducted by the Debtor pursuant to the Bidding Procedures obtained the highest and best value for the Acquired Assets for the Debtor and the estate.

**H. Fair Consideration**. The consideration to be paid by the Buyer under the APA (i) constitutes fair and reasonable consideration for the Acquired Assets, (ii) is the highest and best offer for the Acquired Assets, (iii) will provide a greater recovery for the Debtor's estate and creditors than would be provided by any other practically available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and other applicable laws.

**I. No Successor or Other Derivative Liability**. The Buyer is not, and will not be, a mere continuation, and is not holding itself out as a mere continuation, of the Debtor or its estate and there is no continuity between the Buyer and the Debtor. The Sale Transaction does not amount to a consolidation, merger or *de facto* merger of the Buyer and the Debtor.

**J. Good Faith; No Collusion**. The Debtor and the Buyer, and their respective counsel and/or advisors, have negotiated, proposed and entered into the APA and the Sale Transaction contemplated therein in good faith, without collusion and from arm's-length bargaining positions. Buyer is a "good faith purchaser" and is acting in good faith within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to all the protections afforded thereby. The Buyer has proceeded in good faith in all respects.

**K. Notice**. As evidenced by the certificates of service filed with the Court: (i) due, proper, timely, adequate and sufficient notice of the Sale Motion, the Sale Hearing, the Sale Transaction and the Sale Order and the other relief requested in the Sale Motion was provided by the Debtor; (ii) such notice was good, sufficient and appropriate under the particular circumstances and complied with the Bidding Procedures Order, the Bankruptcy Code, the Bankruptcy Rules and the local rules and orders of the Court; and (iii) no other or further notice of the Sale Motion, the Sale Transaction, the Sale Hearing, the Sale Order or any of the relief requested in the Sale Motion is required.

**L. Satisfaction of Section 363(f) Standards**. Except as otherwise provided in this Sale Order, the Debtor shall sell the Acquired Assets to the Buyer free and clear of all liens, claims (including those that constitute a "claim" as defined in section 101(5) of the Bankruptcy Code). "Claims" shall include any and all liabilities or obligations of the Debtor whatsoever. Those holders of Claims who did not object (or who ultimately withdrew their objections, if any) to the Sale Transactions or the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. All persons having Claims of any kind or nature whatsoever against the Debtor or the Acquired Assets shall be forever barred, estopped and permanently enjoined from pursuing or asserting such Claims against the Buyer or any of its assets, property, affiliates, successors, assigns, or the Acquired Assets.

**M. Sale Expressly Conditioned Upon Free and Clear**. Except as otherwise provide in this Sale Order, Buyer would not have entered into the APA and would not consummate the transactions contemplated thereby and hereunder if the sale of the Acquired Assets were not free and clear of all Claims. A sale of the Acquired Assets other than one free and clear of all Claims would adversely impact the Debtor, the estate, and creditors, and would yield substantially less value for the Debtor's estate.

**N. Assumption and Assignment of the Assigned Contracts; Adequate Assurance of Future Performance**. The ability to assume and assign Debtor's contracts is integral to the purpose of the APA, is in the best interests of the Debtor and its estate, and represents the reasonable exercise of the Debtor's sound business judgment. Accordingly, the Assigned Contracts may be assumed by the Debtor and assigned to the Buyer as provided for in the APA and this Sale Order.

**O. Validity of the Transfer**. As of the Closing, the transfer of the Acquired Assets to the Buyer will be a legal, valid and effective transfer of the Acquired Assets and will vest the Buyer with all right, title and interest of the Debtor in and to the

Acquired Assets, free and clear of all Claims. The consummation of the Sale Transaction is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code.

**P. Power and Authority**. The Debtor, by its CRO Sheldon Stone, (i) has full corporate power and authority to execute the APA and all other documents contemplated thereby, and the Sale Transaction has been duly and validly authorized by all necessary corporate action of the Debtor, (ii) has all of the corporate power and authority necessary to consummate the transactions contemplated by the APA, and (iii) upon entry of this Sale Order, other than any consents identified in the APA, needs no consent or approval from any other person to consummate the Sale Transaction.

**Q. Waiver of Bankruptcy Rules 6004(h) and 6006(d)**. The sale of the Acquired Assets must be approved and consummated promptly in order to preserve the value of the Acquired Assets. Therefore, time is of the essence in consummating the Sale Transaction. Accordingly, there is sufficient cause to lift the stay contemplated by Bankruptcy Rules 6004(h) and 6006(d) with regards to the transactions contemplated by this Sale Order.

**R. Legal and Factual Bases**. The legal and factual bases set forth in the Sale Motion and at the Sale Hearing establish just cause for the relief granted herein.

**NOW THEREFORE, IT IS ORDERED THAT**:

1. **Motion is Granted**. The Sale Motion and the relief requested therein is granted and approved as set forth herein.

2. **Fair Purchase Price**. The consideration provided by the Buyer under the APA and this Sale Order, which consists of a bid of $1,250,000.00 is fair and reasonable and payment of this amount constitutes reasonably equivalent value paid for the Acquired Assets.

3. **Approval of the APA**. The APA and the Sale Transaction contemplated therein and all of the terms and conditions thereof are hereby approved.

4. **Consummation of Sale Transaction**. Pursuant to sections 105, 363 and 365 of the Bankruptcy Code, the Debtor, as well as its officers, employees and agents, are authorized to execute, deliver and perform their obligations under and comply with

the terms of the APA and to consummate the Sale Transaction pursuant to and in accordance with the terms and conditions of the APA and this Sale Order.

5. **Disposition of Sale Proceeds**. The proceeds from the Sale Transaction shall be distributed as follows:

> a. $725,000.00 to Manufacturers Capital, a division of Commercial Credit Group ("Manufacturers Capital"). Upon receipt of the $725,000.00 payment provided for herein, the secured claim asserted by Manufacturers Capital shall be deemed fully satisfied and any and all liens and security interests granted by Debtor or existing in Debtor's assets in favor of Manufacturers Capital shall be automatically released and be unenforceable against the Debtor and the estate without further order of the Court; provided however, any resulting general unsecured non-priority deficiency claims against the Debtor shall not be deemed satisfied and any such resulting general unsecured non-priority deficiency claims are expressly preserved.
>
> b. $425,000.00 to Trion Solutions, Inc. Upon receipt of the $425,000.00 payment provided for herein and the $90,000.00 payment described in 5 (d) below, the secured claim asserted by Trion Solutions, Inc. and/or Trion Staffing Solutions, Inc. (collectively, "Trion") shall be deemed fully satisfied and any and all liens and security interests granted by Debtor or existing in Debtor's assets in favor of Trion shall be automatically released and be unenforceable against the Debtor and the estate without further order of the Court; provided however, any resulting general unsecured non-priority deficiency claims against the Debtor shall not be deemed satisfied and any such resulting general unsecured non-priority deficiency claims are expressly preserved.
>
> c. $100,000.00 as a carveout and surcharge under section 506(c) of the Bankruptcy Code (to which Trion and Manufacturers Capital agree) for the benefit of the professionals employed in this case (collectively, the "Professionals") by the Debtor and Official Committee of Unsecured Creditors ("Committee"), with $25,000.00 allocated to Winegarden, Haley, Lindholm, Tucker, and Himelhoch PLC, $25,000.00 allocated to the Amherst Consulting, LLC, $25,000.00 allocated to Miller Canfield Paddock and Stone PLC, and $25,000.00 allocated to Oxford Restructuring Advisors, LLC. The $100,000.00 shall (i) be free and clear of all liens, claims, encumbrances and other interests, in partial satisfaction of the amounts owed by the Debtor to the professionals identified above and (ii) not be subject to disgorgement,

reduction, reallocation, or dilution of any kind unless the Court fails to award or allow more than $25,000 to any such professional identified above on a final basis. The funds shall be held in escrow pending further court order or approval of fee applications filed by the respective professionals.

d. Daniel Schreiber agrees to the forfeiture of the $100,000.00 deposit tendered in connection with his purchase offer in this case, which deposit is held in the Winegarden, Haley, Lindholm, Tucker, and Himelhoch PLC client trust account. The deposit is deemed forfeited to the Debtor and the estate without further order of the Court, and at the closing of the sale to Buyer Winegarden, Haley, Lindholm, Tucker, and Himelhoch PLC is authorized and directed to disburse the sum of $90,000.00 to Trion Solutions Inc. in order to provide for the full satisfaction of the lien asserted by Trion. The remaining $10,000.00 shall be delivered to the estate, and Winegarden, Haley, Lindholm, Tucker, and Himelhoch PLC is authorized and directed to disburse said sum to the estate's account.

e. For the avoidance of doubt, all assets not a part of the sale shall remain in the Estate. Said assets include, without limitation, the remaining $10,000 related to the Schreiber deposit, all receivables except for the IMOD receivable which will be transferred to Buyer, all cash of the Debtor (which the Debtor believes is approximately $91,000.00) including certain funds held in escrow related to TAG, and Chapter 5 causes of action with an unknown value.

f. Following the release of the liens of the secured creditors as outlined in subparagraphs a and b above, the Debtor shall immediately pay US Trustee fees in the amount of $25,466.75.

6. **Additional Instruments and Documents**. The Debtor and its respective officers, employees and agents, are authorized to execute and deliver, and authorized to perform under, consummate and implement all additional instruments and documents that may be reasonably necessary or desirable to implement the APA and to take all further actions as may be (a) reasonably requested by the Buyer for the purpose of assigning, transferring, granting, conveying and conferring to the Buyer and/or providing possession to the Buyer of, the Acquired Assets or (b) necessary or appropriate to the performance of the obligations contemplated by the APA, all without further order of the Court.

7. **Transfer of Assets Free and Clear**. Pursuant to sections 105(a), 363(b), 363(f)

and 365 of the Bankruptcy Code, the Debtor is authorized to transfer the Acquired Assets in accordance with the terms of the APA and this Sale Order. The Acquired Assets shall be transferred to the Buyer, and upon the Closing, such transfer shall: (a) be valid, legal, binding and effective; (b) vest the Buyer with all right, title and interest of the Debtor in the Acquired Assets; and (c) be free and clear of all Claims (including Claims of any governmental authority) in accordance with section 363(f) of the Bankruptcy Code, with all Claims that represent interests in any of the Acquired Assets to attach to the net proceeds of the Sale Transaction, in the same amount and order of their priority, with the same validity, force and effect which they have against the Acquired Assets, and subject to any claims and defenses the Debtor may possess with respect thereto in each case immediately before the Closing; provided, however, the net proceeds of the Sale Transaction must be distributed in accordance with paragraph five above.

8. **Holders of Claims Barred and Enjoined**. All persons and entities (and their respective successors and assigns), are hereby forever barred, estopped and permanently enjoined from asserting or pursuing Claims against the Buyer or the Acquired Assets.

9. **Release of Claims as of Closing; Recording Officers**. This Sale Order (a) shall be effective as a determination that, as of the Closing, all Claims have been unconditionally released, discharged and terminated as to the Buyer and the Acquired Assets, and that the conveyances and transfers described herein have been effected, and (b) is and shall be binding upon and govern the acts of all persons, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments that reflect that the Buyer is the assignee and owner of the Acquired Assets free and clear of all Claims, or who may be required to report or insure any title or state of title in or to any lease (all such entities being referred to as "Recording Officers"). All Recording Officers are authorized and specifically directed to strike recorded encumbrances, claims, liens and other interests against the Acquired Assets recorded prior to the date of this Sale Order. A certified copy of this Sale Order may be filed with the appropriate Recording Officers to evidence cancellation of any recorded encumbrances, claims, liens and other interests against the Acquired Assets recorded prior to the date of the Sale Order. All Recording Officers are hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA.

10. **Sale Order Constitutes a General Assignment**. On the Closing Date, this Sale Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Acquired Assets acquired under the APA or this Sale Order or a bill of sale or assignment transferring good and marketable title and interest in all of the Acquired Assets to the Buyer.

11. **Licenses and Permits**. To the maximum extent available under applicable law and to the extent provided for under the APA, the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the Debtor with respect to the Acquired Assets and, to the maximum extent available under applicable law and to the extent provided for under the APA, all such licenses, permits, registration and governmental authorizations and approvals are deemed to have been transferred to the Buyer as of the Closing Date.

12. **No Successor or Other Derivative Liability**. By virtue of the Sale Transaction, the Buyer and its affiliates, successors and assigns, shall not be deemed or considered to: (a) be a legal successor, or otherwise be deemed a successor to the Debtor; (b) have, *de facto* or otherwise, merged with or into the Debtor; or (c) be a continuation or substantial continuation, or be holding itself out as a mere continuation, of the Debtor or its estate, businesses or operations, or any enterprise or operations of the Debtor, in each case by any law or equity, and the Buyer has not assumed nor is it in any way responsible for any liability or obligation of the Debtor or the Debtor's estate, except as expressly set forth in the APA. The Buyer and its affiliates, successors and assigns shall have no successor, transferee or vicarious liability of any kind or character, whether known or unknown as of the Closing Date, now existing or hereafter arising or arising based on action of the Debtor taken after the Closing Date.

13. **Assumption and Assignment of Assigned Contracts**. The Debtor is hereby authorized in accordance with sections 105(a) and 365 of the Bankruptcy Code to assume and assign its contracts to the Buyer free and clear of all Claims and to execute and deliver to the Buyer such documents or other instruments as may be necessary to assign and transfer the contracts to the Buyer. Upon the Closing, the Buyer shall be fully and irrevocably vested with all right, title and interest of the Debtor under any assigned contract or lease and, pursuant to section 365(k) of the Bankruptcy Code, the Debtor shall be relieved from any further liability with respect to the assigned contracts. The Buyer acknowledges and agrees that it is obligated to pay all cure costs associated with any contracts it assumes and that from and after

the Closing it shall comply with the terms of the assigned contracts in their entirety unless any such provisions are not enforceable pursuant to the terms of this Sale Order.

15. **Ipso Facto and Similar Clauses Ineffective**. Any assumed and assigned contracts shall be transferred to, and remain in full force and effect for the benefit of, the Buyer in accordance with its respective terms, notwithstanding any provision in the contract that prohibits, restricts or conditions such assignment or transfer or that requires a debtor in possession or a trustee to assume and assign a contract by a date certain and otherwise provides for automatic rejection of such contract. The Buyer shall be entitled to operate under any assigned contracts in all ways necessary.

16. **No Defaults under Assigned Contracts**. Upon the Debtor's assignment of a contract to the Buyer under the provisions of this Sale Order, no default shall exist under any Contract or Lease, and no counterparty to any Contract or Lease shall be permitted to declare a default against the Debtor or the Buyer or otherwise take action against the Buyer as a result of any Debtor's financial condition, bankruptcy or failure to perform any of its obligations under the Contract or Lease.

17. **Waiver of Bankruptcy Rules 6004(h) and 6006(d)**. Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d) or any applicable provisions of the Local Rules, this Sale Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the fourteen (14) day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply. Any party objecting to this Sale Order must exercise due diligence in filing an appeal and pursuing a stay within the time prescribed by law and prior to the Closing, or risk that its appeal will be foreclosed as moot.

18. **Binding Effect of Sale Order**. The terms and provisions of the APA and this Sale Order shall be binding in all respects upon, or shall inure to the benefit of, the Debtor, its estate and creditors, the Buyer, and their respective affiliates, successors and assigns, and any affected third parties, including all persons asserting Claims, notwithstanding any subsequent appointment of any trustee, examiner or receiver under any chapter of the Bankruptcy Code or any other law, and all such provisions and terms shall likewise be binding on such trustee, examiner or receiver and shall not be subject to rejection or avoidance by the Debtor, its estate, creditors or any trustee, examiner or receiver.

19. **Modification of APA.** The APA, the Related Agreements and any other agreements, documents or other instruments, may be modified, amended or

supplemented by the parties thereto, in a writing signed by each party, and in accordance with the terms thereof, without further order of the Court; provided that: (i) any such modification, amendment or supplement does not materially change the terms of this Sale Order, the APA or any related agreements, documents or other instruments.

20. **Retention of Jurisdiction**. This Court shall retain exclusive jurisdiction to, among other things, interpret, enforce and implement the terms and provisions of this Sale Order and the APA, all amendments thereto, any waivers and consents thereunder (and of each of the agreements executed in connection therewith), to adjudicate disputes related to this Sale Order or the APA (and such other related agreements, documents or other instruments) and to enforce the injunctions set forth herein.

21. **Covenants; Surviving Obligations**. Notwithstanding anything to the contrary contained in this Sale Order and the APA, Buyer agrees to take any assumed and assigned contracts subject to, and to assume, abide by, and honor: (i) all monetary obligations payable under each Assigned Contract; (ii) all the terms, conditions, covenants and obligations to be performed by Buyer under each assigned contract; and (iii) the terms, conditions, and restrictions set forth in any assigned contract (collectively, the "Covenants"). Buyer further agrees to take the applicable assigned contracts subject to, and to assume, abide by, and honor, all obligations and amounts payable under the applicable assigned contracts and Covenants that are not yet known, liquidated or due and owing thereunder (the "Surviving Obligations"), which will be billed in the ordinary course, whether or not such obligations or amounts relate to the period prior to the date of assignment of the applicable assigned contract.

22. **Release of Potential Estate Causes of Action Against Trion and Covenants Not to Sue**. The Debtor and the Committee (but not its individual members) each, for itself and on behalf of its successors, assigns, trusts, trustees, attorneys, financial advisors, Professionals, agents, officers, directors, managers, shareholders, employees, representatives, subsidiaries, affiliated entities (including any sister and/or parent company thereof), joint ventures, divisions, general or limited partners, principals and the heirs, executors, administrators, predecessors, successors, purchasers and assigns of each of the foregoing (collectively, exclusive of the individual members of the Committee, the "Debtor/Committee Releasing Parties"), do hereby release, acquit and forever discharge and covenant not to sue, in any

jurisdiction, Trion, its successors, assigns, trusts, trustees, attorneys, financial advisors, professionals, agents, officers, directors, managers, shareholders, employees, representatives, subsidiaries, affiliated entities (including any sister and/or parent company thereof), joint ventures, divisions, general or limited partners, principals and the heirs, executors, administrators, predecessors, successors, purchasers and assigns of each of the foregoing (collectively, the "Trion Released Parties"), from any and all debts, demands, causes of action, legal claims, claims, charges, complaints, suits, warranties, covenants, contracts, promises, obligations, liability or claim of any kind, type or description, whether known or unknown, disputed or undisputed, accrued or unaccrued, matured or unmatured, liquidated or contingent, foreseen or unforeseen, asserted or unasserted, from the beginning of time through and including the date of entry of this order that they may assert against the Trion Released Parties, including, but not limited to claims and causes of action arising under or pursuant to sections 544, 545, 547, 548, 549, and 550 of the Bankruptcy Code or the Michigan Uniform Voidable Transactions Act, M.C.L. § 566.31, et seq., that arise from or relate to the Bankruptcy Case and the Asset Sale.

23. **Release of Potential Estate Causes of Action Against Manufacturers Capital and Covenants Not to Sue**. The Debtor/Committee Releasing Parties do hereby release, acquit and forever discharge and covenant not to sue, in any jurisdiction, Manufacturers Capital, its successors, assigns, trusts, trustees, attorneys, financial advisors, professionals, agents, officers, directors, managers, shareholders, employees, representatives, subsidiaries, affiliated entities (including any sister and/or parent company thereof), joint ventures, divisions, general or limited partners, principals and the heirs, executors, administrators, predecessors, successors, purchasers and assigns of each of the foregoing (collectively, the "Manufacturers Capital Released Parties"), from any and all debts, demands, causes of action, legal claims, claims, charges, complaints, suits, warranties, covenants, contracts, promises, obligations, liability or claim of any kind, type or description, whether known or unknown, disputed or undisputed, accrued or unaccrued, matured or unmatured, liquidated or contingent, foreseen or unforeseen, asserted or unasserted from the beginning of time through and including the date of entry of this order that the Debtor/Committee Releasing Parties may assert against the Manufacturers Capital Released Parties, including, but not limited to claims and causes of action arising under or pursuant to sections 544, 545, 547, 548, 549, and 550 of the

Bankruptcy Code or the Michigan Uniform Voidable Transactions Act, M.C.L. § 566.31, et seq., that arise from or relate to the Bankruptcy Case and the Asset Sale.

24. **Manufacturers Release of Debtor/Committee**. The Manufacturers Released Parties do hereby release, acquit and forever discharge and covenant not to sue, in any jurisdiction the Debtor/Committee Releasing Parties from any and all debts, demands, causes of action, legal claims, claims, charges, complaints, suits, warranties, covenants, contracts, promises, obligations, liability or claim of any kind, type or description, whether known or unknown, disputed or undisputed, accrued or unaccrued, matured or unmatured, liquidated or contingent, foreseen or unforeseen, asserted or unasserted from the beginning of time through and including the date of entry of this Order that the Manufacturers Released Parties may assert against Debtor/Committee Releasing Parties, that arise from or relate to the Bankruptcy Case and the Asset Sale; provided, however, Manufacturers Capital is not releasing (a) any resulting general unsecured non-priority deficiency claims against the Debtor after it receives the funds provided in paragraph 5(a) of this Order; or (b) Schreiber.

25. **Trion Release of Debtor/Committee**. The Trion Released Parties do hereby release, acquit and forever discharge and covenant not to sue, in any jurisdiction the Debtor/Committee Releasing Parties from any and all debts, demands, causes of action, legal claims, claims, charges, complaints, suits, warranties, covenants, contracts, promises, obligations, liability or claim of any kind, type or description, whether known or unknown, disputed or undisputed, accrued or unaccrued, matured or unmatured, liquidated or contingent, foreseen or unforeseen, asserted or unasserted from the beginning of time through and including the Effective Date that the Trion Released Parties may assert against Debtor/Committee Releasing Parties, that arise from or relate to the Bankruptcy Case and the Asset Sale; provided, however, Trion is not releasing any resulting general unsecured non-priority deficiency claims against the Debtor after it receives the funds provided in paragraph 5(b) of this Order.

26. **Trion and Manufacturers Releases**. (a) Trion Released Parties do hereby release, acquit and forever discharge and covenant not to sue, in any jurisdiction the Manufacturers Released Parties from any and all debts, demands, causes of action, legal claims, claims, charges, complaints, suits, warranties, covenants, contracts, promises, obligations, liability or claim of any kind, type or description, whether

known or unknown, disputed or undisputed, accrued or unaccrued, matured or unmatured, liquidated or contingent, foreseen or unforeseen, asserted or unasserted from the beginning of time through and including the Effective Date that the Trion Released Parties may assert against the Manufacturers Capital Released Parties that arise from or relate to the Bankruptcy Case and the Asset Sale; and (b) Manufacturers Released Parties do hereby release, acquit and forever discharge and covenant not to sue, in any jurisdiction the Trion Released Parties from any and all debts, demands, causes of action, legal claims, claims, charges, complaints, suits, warranties, covenants, contracts, promises, obligations, liability or claim of any kind, type or description, whether known or unknown, disputed or undisputed, accrued or unaccrued, matured or unmatured, liquidated or contingent, foreseen or unforeseen, asserted or unasserted from the beginning of time through and including the Effective Date that the Manufacturers Released Parties may assert against the Trion Released Parties that arise from or relate to the Bankruptcy Case and the Asset Sale.

**Signed on February 26, 2021**



/s/ Maria L. Oxholm

**Maria L. Oxholm
United States Bankruptcy Judge**